**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 35637**

| | |
|---|---|
| IN THE MATTER OF THE ) | |
| TERMINATION OF THE PARENT-CHILD ) | |
| RELATIONSHIP OF: JANE DOE, A CHILD ) | |
| UNDER 18 YEARS OF AGE. ) | Boise, February 2009 Term |
| ------------------------------------------------------- ) | |
| JOHN DOE and JANE DOE, ) | 2009 Opinion No. 27 |
| ) | |
|     Petitioners-Appellants, ) | Filed: March 4, 2009 |
| ) | |
| v. ) | Stephen Kenyon, Clerk |
| ) | |
| DEPARTMENT OF HEALTH AND ) | |
| WELFARE, ) | |
| ) | |
|     Respondent. ) | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District of the State of Idaho, Canyon County. Honorable Dan C. Grober, Magistrate Judge.

The decision of the magistrate court is <u>affirmed</u>.

Wiebe & Fouser, Canyon County Public Defender, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.

_____

HORTON, Justice

    This appeal arises from a magistrate judge's order granting the petition of Respondent Department of Health & Welfare (the Department) to terminate the parent-child relationship between Appellants John Doe and Jane Doe and their child, I.P. This is an expedited appeal directly from that order. We conclude that the record contains substantial and competent evidence supporting the trial court's findings of abandonment and we therefore affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    I.P. was born on July 19, 2005, and Appellants are her biological parents. On July 25, 2006, John Doe's parental rights were terminated as to I.P.'s siblings. On January 30, 2007, Jane Doe voluntarily terminated her parental rights as to I.P.'s siblings. On the morning of October 1,

1

2006, I.P. was taken to the Mercy Medical Center emergency room by ambulance. Because I.P. was accompanied to the hospital by a babysitter and no parent or guardian subsequently appeared at the hospital, the Nampa Police Department declared I.P. in imminent danger and placed her into the care of the Department. Jane Doe was incarcerated during this time and was not released until October 16, 2006. John Doe's whereabouts were unknown at this time.

On October 3, 2006, at a shelter care hearing, the trial court ordered I.P. to remain in the temporary legal custody of the Department. Jane Doe appeared at the hearing but John Doe did not. On October 26, 2006, at the adjudicatory hearing, the court ordered that I.P. be placed in the legal custody of the Department. Appellants did not attend the hearing. On December 5, 2006, the court approved the case plan developed by the Department with Appellants. Appellants did not attend the hearing.

John Doe was incarcerated from January 2, 2007 to March 26, 2007 on charges of trafficking in methamphetamine and contempt. Jane Doe was incarcerated from January 3, 2007 to February 1, 2007 on charges of trafficking in methamphetamine. She was again incarcerated from April 16, 2007 to May 11, 2007 on charges of possession of a controlled substance and trafficking in methamphetamine.

On April 24, 2007, at a review hearing, the court ordered I.P. to remain in the legal custody of the Department. Appellants did not attend the hearing. On June 5, 2007, Jane Doe was sentenced for possession of a controlled substance with intent to deliver. She received a suspended sentence and was placed on probation. On July 3, 2007, the prosecution filed an allegation that Jane Doe had violated her probation by absconding from supervision. She was arrested on July 25, 2007 and remained in custody until her suspended sentence was imposed in August, 2007. She was released from prison on February 15, 2008.

On July 7, 2007, John Doe was sentenced for possession of methamphetamine. He received a suspended sentence and was placed on probation. He subsequently absconded from supervision and was arrested on August 22, 2007. His suspended sentence was imposed on November 16, 2007.

On October 9, 2007, at a permanency review hearing, the court ordered I.P. to remain in the legal custody of the Department. On November 29, 2007, the Department filed a Verified Petition for Termination of the Parent-Child Relationship. Trial on the Department's petition was held on March 18, 2008, April 22, 2008, and May 13, 2008. On July 24, 2008, the

magistrate judge issued a memorandum decision and order in which, applying a standard of clear and convincing evidence, he found that each Appellant had abandoned and neglected I.P. and that termination was in I.P.'s best interest. On August 14, 2008, the court issued separate findings of fact and conclusions of law regarding each Appellant and terminating the parent-child relationship. Appellants timely appealed and on September 11, 2008, we granted permissive appeal to this Court.

## II. STANDARD OF REVIEW

In an action to terminate parental rights, where the trial court has explicitly determined the case by application of the clear and convincing evidentiary standard, this Court must determine if the decision was supported by substantial and competent evidence. *State v. Doe*, 144 Idaho 534, 535, 164 P.3d 814, 815 (2007) (citing *CASI Found., Inc. v. Doe*, 142 Idaho 397, 399, 128 P.3d 934, 936 (2006)). "Substantial competent evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *State v. Doe*, 143 Idaho 343, 345-46, 144 P.3d 597, 599-600 (2006) (quoting *Folks v. Moscow Sch. Dist. No. 281*, 129 Idaho 833, 836, 933 P.2d 642, 645 (1997)).

## III. ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002) (citing *Quilloin v. Walcott*, 434 U.S. 246 (1978)). This interest is protected by the Fourteenth Amendment of the U.S. Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007) (citing *In re Bush*, 113 Idaho 873, 875, 749 P.2d 492, 494 (1988)). Our legislature also recognizes the importance of maintaining the parent-child relationship: "Implicit in [the Termination of Parent and Child Relationship] act is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001. Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006) (citation omitted). Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence. *Id*. (citing *Bush*, 113 Idaho at 876, 749 P.2d at 495).

In the instant case, the Department filed a petition for the termination of the parent-child relationship pursuant to I.C. § 16-2005. Idaho Code § 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best

interest and any one of the following five factors exist: (a) abandonment, (b) neglect or abuse, (c) lack of a biological relationship between the child and a presumptive parent, (d) mental incapacity of the parent, or (e) where termination is in the best interest of the parent. I.C. § 16-2005. Each statutory ground is an independent basis for termination. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007) (citing *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991)).

The magistrate judge found that the Department proved the following grounds for termination of the parent-child relationship by clear and convincing evidence: (1) neglect as defined in I.C. § 16-2002(3)(b); (2) neglect as defined in I.C. §§ 16-2002(3)(a) and 16-1602(25); and (3) abandonment as defined in I.C. § 16-2002(5). As we conclude that there is substantial and competent evidence supporting the finding that Appellants abandoned I.P., we address only that ground and do not reach the issue of neglect.

Idaho Code § 16-2002(5) defines abandonment and provides in relevant part:

"Abandonment" means the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. Failure of the parent to maintain this relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment under this section . . .

Appellants argue that the trial court's findings of abandonment are not supported by substantial and competent evidence. We address the evidence relating to abandonment of I.P. by John Doe and Jane Doe individually.

## A. There is substantial and competent evidence supporting the magistrate judge's conclusion that John Doe abandoned I.P.

I.P. was placed into the care of the Department on October 1, 2006. The record indicates that John Doe has not paid any child support for the benefit of I.P. since then. The record also indicates that John Doe was incarcerated during a substantial period of the time that I.P. was in the care of the Department. However, even when John Doe was not incarcerated and thus free to maintain personal contact with I.P., he failed to do so.

John Doe was not incarcerated from October 1, 2006 to January 2, 2007. He had no contact with I.P. during this time. He was again out of custody from March 26, 2007 to August

4

22, 2007.[1]  In April of 2007, John Doe contacted the Department and scheduled three visits with I.P, but attended only one of the visits.  This was the only in-person contact that John Doe had with I.P. from the time she came into the care of the Department on October 1, 2006 until his parental rights were terminated in July, 2008.

John Doe did not contact I.P. during the times that he was incarcerated and his contact with the Department during this time was extremely limited.  John Doe contacted the Department by way of letter twice while incarcerated after November 20, 2007, the second letter being sent after the termination trial had begun.  In both letters, John Doe requested that the Department arrange for supervised visits with I.P. and that the Department provide him with photographs of I.P.

John Doe argues that the instant case is similar to *Doe v. State*, 137 Idaho 758, 53 P.3d 341 (2002).  In that case, the parent had been incarcerated the entirety of the child's life.  *Id*. at 759, 53 P.3d at 342.  Even though the parent was severely restricted in what he could do to establish a relationship with his child, the record indicated that the parent did all he could to establish a relationship.  The parent sent his child gifts and made efforts to contact the child through the Department and the child's maternal grandmother, but he was unsuccessful.  *Id*. at 762, 53 P.3d at 345.  We therefore vacated the judgment terminating the parental right of the parent in that case.  *Id*.

John Doe's reliance on that case is misplaced.  John Doe's conduct in the instant case does not compare favorably with the efforts to establish the parent-child relationship demonstrated by the incarcerated parent in *Doe v. State*, 137 Idaho 758, 53 P.3d 341 (2002).  In this case, John Doe visited I.P. only once during the nearly six months that he was out of custody after I.P. was placed in the care of the Department.  John Doe failed to complete any steps of the Department's case plan.  In *Doe v. State*, we recognized that the parent's actions were restricted while he was in prison, but the parent still attempted to establish a relationship with his child despite those restrictions.  Here, John Doe faced no such restrictions while he was not incarcerated, yet he made virtually no attempt to establish a relationship with I.P.  After

---

[1]    The record is unclear whether John Doe was incarcerated the entire time from August 22, 2007 to November 20, 2007.  John Doe was placed on probation on July 11, 2007 and he subsequently absconded from supervision.  John Doe was arrested on August 22, 2007, and he was not sentenced until November 16, 2007.  John Doe's brief on appeal states that he has been incarcerated since he was arrested in August 2007.  Therefore, for purposes of this opinion, we will assume that John Doe was incarcerated the entire time from August 22, 2007 until he was sentenced to prison.

reviewing the record before us, we are hard-pressed to imagine a situation wherein a parent resisting termination of the parent-child relationship could exhibit less effort or interest in maintaining the relationship than John Doe has shown in this case. We conclude that the record contains substantial and competent evidence supporting the magistrate judge's conclusion that John Doe abandoned I.P.

**B. There is substantial and competent evidence supporting the magistrate judge's conclusion that Jane Doe abandoned I.P.**

As previously noted, I.P. was placed into the care of the Department on October 1, 2006. Jane Doe has not paid any child support for the benefit of I.P. since then. The record also indicates that Jane Doe was incarcerated during a substantial period of the time that I.P. was in the care of the Department. Recognizing that custody places significant restrictions on a parent's ability to maintain personal contact with a child, we direct our attention to the time Jane Doe was out of custody and free to maintain personal contact with I.P.

Jane Doe was out of custody from October 16, 2006 to January 3, 2007. She had no contact with I.P. during this time. Jane Doe was freed from February 1, 2007 to April 16, 2007 and again she had no contact with I.P. during this time. She did, however, contact the Department in February, 2007 to inform the Department that she did not wish to have contact with I.P. until after she was sentenced on pending charges. She was out of custody from May 11, 2007 to August 20, 2007 and yet she had no contact with I.P. during this time, even though her pending charges were resolved on June 5, 2007.

Jane Doe subsequently violated her probation and her suspended sentence was imposed on August 20, 2007. While imprisoned, Jane Doe contacted the Department by way of letter on four occasions in December of 2007 and January of 2008 and also wrote I.P. a letter on February 9, 2008. Jane Doe was released on February 15, 2008. Following her release from prison, Jane Doe visited I.P. four or five times beginning in March of 2008, missing one scheduled visit.

Jane Doe also argues that this case is similar to *Doe v. State*, 137 Idaho 758, 53 P.3d 341 (2002). However, although Jane Doe showed somewhat more interest in I.P. than did John Doe, Jane Doe's reliance on *Doe v. State* is equally misplaced. In *Doe v. State*, the parent attempted to establish a relationship with his child despite the restrictions he faced while incarcerated. In contrast, although Jane Doe had limited personal contact with I.P. beginning in March, 2008, she had no contact with I.P. from October 1, 2006, despite having been out of custody for approximately six months. Despite her awareness of the child protection action, Jane Doe did

6

not complete a single step of the Department's case plan. She elected not to have contact with I.P. while facing charges. Even after she was placed on probation, Jane Doe had no contact with I.P. It was only after her release from prison and after the Department sought to terminate her parental rights that Jane Doe initiated contact with I.P. We conclude that the record contains substantial and competent evidence supporting the trial court's finding that Jane Doe abandoned I.P.

## IV. CONCLUSION

We conclude that the record contains substantial and competent evidence supporting the magistrate judge's findings of abandonment of I.P. by each parent. We therefore affirm the magistrate judge's order terminating Appellants' parental rights.

Justices BURDICK, J. JONES, W. JONES and Justice Pro Tem TROUT, **CONCUR**.