# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35592/35593

| | |
|---|---|
| IN THE MATTER OF TERMINATION OF PARENTAL RIGHTS OF JANE DOE, JOHN DOE, JOHN DOE I, CHILDREN UNDER 18 YEARS OF AGE, | ) ) ) ) |
| _____ | ) |
| DEPARTMENT OF HEALTH & WELFARE, | ) ) |
| | ) |
| Plaintiff/Respondent, | ) |
| v. | ) ) |
| JOHN DOE II, | ) ) |
| Defendant/Appellant. | ) ) |
| _____ | ) |
| IN THE MATTER OF TERMINATION OF PARENTAL RIGHTS OF JANE DOE, JOHN DOE, JOHN DOE I, CHILDREN UNDER 18 YEARS OF AGE, | ) ) ) ) |
| _____ | ) |
| DEPARTMENT OF HEALTH & WELFARE, | ) ) |
| | ) |
| Plaintiff/Respondent, | ) |
| | ) |
| v. | ) |
| | ) |
| JANE DOE I, | ) |
| | ) |
| Defendant/Appellant. | ) |

Boise, May 2009

2009 Opinion No. 76

Filed: May 29, 2009

Stephen W. Kenyon, Clerk

Appeal from the Fifth Judicial District of the State of Idaho, Gooding County. Hon. Barry Wood, District Judge. Hon. Casey Robinson, Magistrate Judge.

The decision of the district court is affirmed.

Capitol Law Group, PLLC, Gooding, for appellant Jane Doe I.

Rockne Lammers, Jerome, for appellant John Doe II.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.

_____

1

W. JONES, Justice

## NATURE OF CASE

Jane Doe I and John Doe II (Appellants) separately appeal Fifth Judicial District Judge Barry Wood's decision to affirm Magistrate Judge Casey Robinson's decision to terminate their parental rights to their children based on neglect and the best interest of the children. This Court consolidated the cases. Appellants allege on appeal that there is insufficient evidence to justify termination of their parental rights. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants had four children that lived in their home prior to the commencement of this action, including two girls and two boys. The oldest child, a daughter, is from the husband's prior marriage and is not involved in this case. Appellants are the natural parents of the other three children, who were seven, four and three when this action commenced.

In May 2005, the Department of Health and Welfare (the Department) received a call that Appellants' three-year-old child was wandering the streets in the City of Gooding. Soon thereafter, in-home family services from Northstar were offered to Appellants. In August 2005, the child was again found wandering the streets and law enforcement notified the Department. These events led to the declaration that three of Appellants' children were in imminent danger. The children were subsequently returned to the family under protective supervision with a safety plan. At that time, a case plan was created that required Appellants to attend counseling, obtain adequate housing with a fenced yard, get mental health assessments and follow the recommendations contained in those assessments. Appellants were also required to get services for the wife's disability (she suffers from seizures that cause her to blackout) and to make sure the children were never left alone with her. The husband was required to maintain employment.

Appellants complied with a portion of the plan. They tried to keep a clean home, they installed locks and alarms on the house and they tried to incorporate discipline in the home. However, Appellants did not complete all of the case plan requirements. Specifically, the husband had trouble maintaining employment and he did not feel that he or his wife needed counseling. Appellants did not follow Northstar's recommendations, they never set up daycare, and they did not follow the safety plan.

The magistrate court held hearings on this matter in June 2007. A former teacher of one of the children testified that while the child was in foster care, she "blossomed," but after the home visits with her parents she did not do well and was "really difficult." The child was not clean when she was with her parents.

A Psycho-Social Rehabilitation (PSR) worker that was assigned to work with Appellants and their children testified that the youngest child had extreme disruptive behaviors; at age five he could not say how old he was, could not say his colors, and could not count to ten. The PSR worker also testified that the child would smear feces on the floor in the home. The PSR worker testified that the child is doing much better in foster care and that the child needs structure, consistency and clear boundaries. The PSR worker also worked with Appellant's middle child; his behavior was similar to the youngest child's, but less extreme. The PSR worker testified that the parents used extremely poor judgment, there was not a safe area in the house and there were nails and junk strewn around. Additionally, although the children wanted to see their parents during the visits, there was little to no interaction between the wife and daughter.

The daughter's foster parent testified that the daughter could not read or write when she went into foster care, they had to work very hard to get the child to the level of performance that she should have been at in school, and the child needs a stable environment with love and attention. The daughter would anticipate the visits with her parents and then would become very emotional and act out after the visits were over.

A speech therapist for the Gooding Schools testified that all of the children's hygiene has improved greatly since going into foster care and that when the children have home visits their "behavior goes off the charts." The principal of Gooding Elementary testified that when the daughter was in Appellants' care she missed twenty-eight days of kindergarten and forty-four days of first grade. Since going into foster care, the daughter has missed only three days of second grade and two days of third grade.

A case worker from the Department testified that the husband had made threats to the children's daycare provider and refused to work with the in-home services provided to Appellants. Additionally, the husband would leave his wife home alone with the children in contravention of the safety plan. Appellants generally refused to follow the recommendations of the psychological evaluations. The case worker recommended terminating Appellants' parental rights.

A worker from Northstar also testified that she worked in Appellants' home three times per week for an hour at a time from June 2005 through March 2006. This was an unusually long period of time, as Northstar typically only works with families for three months. She testified that although Appellants became more cooperative over time, she saw no significant change in their ability to parent. Moreover, while Appellants love their kids "dearly," their efforts to improve their parenting skills were not consistent or long-lasting. The worker never saw evidence of physical abuse, but Appellants did verbally abuse the children while she was present. The verbal abuse lessened as Northstar worked with Appellants.

The magistrate court entered a Memorandum Decision on November 26, 2007 and Findings of Fact, Conclusions of Law and Decree on December 5, 2007. The magistrate court terminated Appellants' parental rights to their three children based on neglect and the best interest of the children. Appellants each appealed the magistrate court's decision to the district court. On June 25, 2008, the district court affirmed the magistrate court's decision to terminate Appellants' parental rights. Appellants then each appealed the district court's decision to this Court and this Court consolidated the cases.

## ISSUE PRESENTED

Whether there was substantial, competent evidence in the record to support the district court's decision to affirm the magistrate court's decision to terminate Appellants' parental rights?

## STANDARD OF REVIEW

The Supreme Court reviews the magistrate court record to determine whether there is substantial, competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008). If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.*

In order to terminate parental rights, the magistrate court must find that termination is in the best interest of the child and that one or more of the conditions listed in I.C. § 16-2005(1) exists, which include: (a) The parent has abandoned the child; (b) The parent has neglected or abused the child; (c) The presumptive parent is not the biological parent of the child; (d) The parent is unable to discharge parental responsibilities and such inability will continue for a

prolonged indeterminate period and will be injurious to the health, morals or well-being of the child; and (e) The parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority. Grounds for termination of parental rights must be established by clear and convincing evidence. I.C. § 16-2009.

## ANALYSIS

The magistrate court terminated Appellants' parental rights based on neglect and the best interest of the children. Neglect for the purposes of the Child Protective Act is defined at I.C. § 16-2002(3): "The parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth . . . ." I.C. § 16-1602(25) further defines a neglected child as one "[w]ho is without proper parental care and control, or subsistence, education, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them . . . " or "[w]hose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being."

In this case, the magistrate court found there was clear and convincing evidence that Appellants neglected their children and termination of parental rights was in the best interest of the children. Specifically, the court found that there was a consistent lack of supervision and financial support; Appellants never completed their case plan, which had been ongoing since September 1, 2005; the children were dirty, unsupervised, and lacking a stable environment; the school age children were absent from school on an alarming number of days; two of the three children had severe behavioral problems that Appellants failed to deal with and progress was made on these problems after removal from Appellants' care; and the oldest of the three children could not read or write until she went into foster care. The district court found there was substantial, competent evidence to support the magistrate court's conclusion.

Although this case is not as clear-cut as most parental termination cases that come before this Court, there is substantial, competent evidence in the record to support terminating Appellants' parental rights. Appellants failed to comply with the magistrate court's orders to complete their case plan, which meets the definition of neglect in I.C. § 16-2002(3). Additionally, the children were without proper parental care when they would spend time with

5

Appellants and Appellants were unable to appropriately discharge their responsibilities as parents, as evidenced by the lack of supervision over the children. The health, safety and well-being of the children were at risk when they were in Appellants' care, which meets the definition of neglect in I.C. § 16-1602(25).

Appellants assert that it is improper for a court to compare the natural parents to foster parents when deciding if parental rights should be terminated. They cite to *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S. Ct. 1388, 1398 (1982), for the proposition that a finding of unfitness does not "purport to determine whether the natural parents or the foster parents would provide the better home." In this case, neither the magistrate court nor the district court relied on a comparison between the natural and foster parents to determine whether there was clear and convincing evidence of neglect. Rather, the district court and magistrate court considered Appellants' failure to commit fully to making the necessary changes in their lives that would provide a more stable environment for their children. Additionally, both courts considered that the children's well-being was in danger when they were in Appellants' care. "The magistrate judge has a better 'opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties.'" *Dept. of Health & Welfare v. Doe*, 145 Idaho 662, 664, 182 P.3d 1196, 1198 (2008) (quoting *In re Aragon*, 120 Idaho 606, 608, 818 P.2d 310, 312 (1991)). Appellants' argument that "there are no set, prescribed methods on how parents should raise their children" is well taken, but it does not address Appellants' numerous, documented shortcomings in raising the young children. Appellants were given plenty of opportunity over a period of more than two years to show the magistrate court that they were not neglecting their children and that the Department's recommendation to remove the children from their care was unwarranted. Appellants' efforts fell short.

Appellants additionally argue that this Court should take into consideration the fact that the husband's teenage daughter has never been subject to the court's jurisdiction under the Child Protective Act. This argument is unavailing. The record does not have enough information for this Court to properly consider the daughter's situation; in fact, the record suggests that the daughter spent a significant amount of time outside Appellants' home when she was living with her natural mother. Moreover, whether Appellants are capable of raising a teenager does not shed light on the question of neglect of the three young children under the age of ten that is before this Court.

We hold there is substantial, competent evidence to support the magistrate's findings of fact and conclusions of law; thus, because the district court affirmed the magistrate court, we affirm the district court as a matter of procedure.

## CONCLUSION

We affirm the district court's decision to affirm the magistrate court's decision to terminate Appellants' parental rights to their three children.

Justices BURDICK, J. JONES, HORTON and J. pro tem TROUT, CONCUR.