# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 36690

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF JOHN DOE, JOHN DOE II AND JANE DOE, PARENT. | 2010 Opinion No. 28 |
| | Filed: April 15, 2010 |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | Stephen W. Kenyon, Clerk |
| Plaintiff-Respondent, | |
| v. | |
| JANE DOE, | |
| Defendant-Appellant. | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. William B. Dillon, III, Magistrate.

Order terminating parental rights, affirmed.

Mark J. Mimura, Canyon County Public Defender; Elizabeth K. Allen, Deputy Canyon County Public Defender, Caldwell, for appellant. Elizabeth K. Allen argued.

Hon. Lawrence G. Wasden, Attorney General; Ty A. Ketlinski, Special Deputy Attorney General, Caldwell, for respondent. Ty A. Ketlinski argued.

---

GRATTON, Judge

Jane Doe (Doe) appeals from the magistrate court's order terminating her parental rights as to her two children, K.E.P. and K.A.P. Specifically, Doe contends that the magistrate erred in finding that termination would be in the best interests of Doe and the children, that Doe failed to substantially complete her case plan, and that Doe is likely to be incarcerated for a substantial period of time during the children's minority.

1

# I.

## FACTS AND PROCEDURAL BACKGROUND

Jane Doe is the mother of three children. The oldest child is from a different father than the two younger children and is not involved in this case. The two younger children, K.E.P. and K.A.P. (the children), were born on September 30, 2004, and September 15, 2005, respectively. The children's father lives in Mexico and has not had any contact with the children.

On June 27, 2007, police officers arrived at an apartment where Doe and the children were staying in order to evict any remaining tenants. Upon performing a records check on Doe, the police discovered that Doe had an outstanding warrant from Lewiston for possession of methamphetamine. Doe requested permission to make arrangements for her children, which was granted. Doe called her friend, whose apartment she and her children had been staying in, and it was decided that the friend's daughter would pick up the children.

The following day, Doe's friend went to the Department of Health and Welfare and told Department social worker, Tracy Warriner, that he was unable to take care of the children. He was advised by the social worker to speak with Doe about whether there were any suitable family members that could care for the children. He returned to the Department the next day and reported that he had been unsuccessful. The children were then declared in imminent danger and placed in protective custody on June 29, 2007. On July 1, 2007, Warriner met with Doe at the Canyon County Jail to discuss whether or not any family members would be viable as a placement option, and Warriner determined that there were none.

On July 2, 2007, the Department filed a petition under the Child Protective Act seeking custody or, in the alternative, protective supervision of the children. A shelter care hearing was held on July 9, 2007, at which the parties stipulated that the children would remain in the custody of the Department pending the adjudicatory hearing. An adjudicatory hearing was held on July 30, 2007, and the matter was continued for a pre-trial hearing because Doe was not present due to her incarceration. Doe failed to appear at the continued hearing held on August 15, 2007, and the court ordered that the Department retain custody of the children for an indeterminate period of time not to exceed their eighteenth birthdays. On August 28, 2007, the court entered a decree of protective custody concluding that the children came within the purview of the Child Protective Act.

The Department prepared a case plan, dated September 9, 2007, and a hearing was held on September 10, 2007, to review the case plan. The case plan required Doe to complete the following tasks: (a) resolve legal problems; (b) obtain a substance abuse evaluation, complete substance abuse treatment, submit to urinalyses, and remain drug free; (c) maintain safe and stable housing; (d) maintain employment to provide financially for the children; (e) complete an approved parenting class; (f) attend ninety percent of the scheduled visits with the children; (g) complete approved domestic violence and anger management classes; and (h) attend all of the children's doctor, WIC, and other developmental appointments. The magistrate court approved the case plan on September 24, 2007.[1]

The magistrate held permanency plan and case plan review hearings on January 1, 2008, and on July 16, 2008, with Doe attending the second hearing by phone. An updated case plan was filed on January 2, 2008. This case plan is substantially the same as the initial case plan with the exception that the requirement of attending ninety percent of the scheduled visits with the children was changed to require Doe to attend all of the scheduled visits. On December 9, 2008, the Department filed a petition seeking to terminate Doe's parental rights in the children.

On January 28, 2009, the case was set for a termination hearing. Doe did not appear as she was in the "rider"[2] program at the time. The court set the case for a pre-trial hearing on March 11, 2009, and a termination hearing on April 1, 2009. A permanency plan review hearing was held on February 18, 2009, and continued to March 11, 2009. At the March 11, 2009, hearing Doe indicated that she had family members who were interested in adopting the children, and the court advised her to have those family members present for the termination hearing. Doe did not appear for the April 1, 2009, termination hearing due to the fact that she had failed to successfully complete her rider and was incarcerated. The court continued the termination hearing to April 29, 2009. The termination hearing was held on April 29, 2009, and the magistrate continued hearings on June 3, 2009; June 10, 2009; and June 17, 2009.

---

[1]     Doe was not present for the case plan review hearing and testified that she did not participate in preparation of the case plan. However, Department case worker, Shelisa Miller, testified that she met with Doe in the Canyon County Jail to discuss the case plan and that she "agreed to do the things on the case plan and she did sign it."

[2]     The incarceration during a period of retained jurisdiction is commonly referred to as a "rider."

At the final termination hearing, the magistrate entered oral findings on the record terminating Doe's parental rights to the children. On July 8, 2009, the magistrate court filed its written decision and decree incorporating its oral findings. Doe appeals.

## II.

## ANALYSIS

The State must prove the grounds for terminating a parent-child relationship by clear and convincing evidence. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006); Idaho Code § 16-2009. "In an action to terminate parental rights, where the trial court has explicitly determined the case by application of the clear and convincing evidentiary standard, this Court must determine if the decision was supported by substantial and competent evidence." *In re Doe*, 146 Idaho 759, 761, 203 P.3d 689, 691 (2009). "Substantial competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotations omitted) (quoting *In re Doe*, 143 Idaho 343, 345-46, 144 P.3d 597, 599-600 (2006)). "This Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated." *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009) (internal quotations omitted) (quoting *Matter of Aragon*, 120 Idaho 606, 608, 818 P.2d 310, 312 (1991)).

A parent has a fundamental liberty interest, protected by the Fourteenth Amendment of the United States Constitution, in maintaining a relationship with his or her child. *In re Doe*, 146 Idaho at 761, 203 P.3d at 691; *see also Quilloin v. Walcott*, 434 U.S. 246 (1978). The Idaho legislature has also recognized the importance of maintaining the parent-child relationship: "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001. "Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship." *In re Doe*, 146 Idaho at 761, 203 P.3d at 691 (citing *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006)). "It is well settled that, in a proceeding to terminate a parent-child relationship, the due process clause mandates that the grounds for termination must be shown by clear and convincing evidence." *Doe*, 148 Idaho at 246, 220 P.3d at 1065 (citing *Doe v. Department of Health and Welfare, Human Services Division*, 141 Idaho 511, 513, 112 P.3d 799, 801 (2005)).

4

In this case, the Department filed a petition for the termination of the parent-child relationship pursuant to Title 16, chapter 20 of the Idaho Code. Idaho Code § 16-2005 sets forth the conditions under which termination of the parent-child relationship may be granted. It states, in relevant part:

> (1) The court may grant an order terminating the relationship where it finds that termination of parental rights is in the best interests of the child and that one (1) or more of the following conditions exist:
> (a) The parent has abandoned the child.
> (b) The parent has neglected or abused the child.
> (c) The presumptive parent is not the biological parent of the child.
> (d) The parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child.
> (e) The parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority.

I.C. § 16-2005(1). "Each statutory ground is an independent basis for termination." *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). The court may also terminate parental rights if it finds that termination is in the best interest of the parent and child. I.C. § 16-2005(3).

The magistrate court determined that termination was in the best interests of the children, that the children had been neglected, that Doe had been incarcerated and was likely to remain incarcerated for a substantial period of time during the children's minority, and that termination was in the best interests of the children and Doe. Doe challenges these findings and conclusions on appeal.

**A.      Neglect**

A finding of neglect, coupled with the determination that termination is in the best interests of the child, is grounds for terminating the parent-child relationship. I.C. § 16-2005(1)(b). The magistrate court concluded that the children were neglected as defined by I.C. § 16-2002(3)(b). "Neglected," as defined under this provision, means "[t]he parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9), Idaho Code." Idaho Code § 16-1629(9) provides, in relevant part:

> There shall be a rebuttable presumption that if a child is placed in the custody of the department and was also placed in out of the home care for a period not less than fifteen (15) out of the last twenty-two (22) months from the date the child entered shelter care, the department shall initiate a petition for

5

termination of parental rights. This presumption may be rebutted by a finding of the court that the filing of a petition for termination of parental rights would not be in the best interests of the child or reasonable efforts have not been provided to reunite the child with his family, or the child is placed permanently with a relative.

Thus, a child is "neglected," as defined by I.C. § 16-2002(3)(b), if the parent has failed to comply with the case plan and reunification has not occurred where the child has been in foster care for at least fifteen out of the last twenty-two months. The magistrate specifically found that Doe had not substantially completed her case plan and that reunification had not occurred within the requisite statutory timeframe.[3]

### 1.    Case plan

Failure to comply with the case plan and the court's orders mandating such compliance can form the basis for neglect as defined in I.C. § 16-2002(3)(b). *See State Department of Health and Welfare v. Doe*, 144 Idaho 312, 313, 160 P.3d 751, 752 (2007); *see also Department of Health and Welfare v. Doe*, 147 Idaho 353, 356, 209 P.3d 650, 653 (2009) (failure to complete case plan meets definition of neglect). As noted, the magistrate determined that Doe had not substantially completed her case plan. Specifically, the magistrate found that: (1) Doe had not resolved her legal problems such that she could care for the children and that she had been and was likely to remain incarcerated; (2) that Doe had not finished substance abuse counseling; (3) that Doe had "come close" to living in one or two places for a 90-day period but that she had not maintained stable housing for a period of at least three months; (4) that Doe was not able to financially provide for the children due to her unstable employment record; (5) that Doe did not complete a parenting class; (6) that Doe had not visited the children consistently; and (7) that Doe did not attend the children's doctor, WIC, and other developmental appointments. The magistrate also found that Doe was "credibility challenged."

The Idaho Supreme Court recently stated:

> Magistrate courts generally have broad discretion in their deliberations; this Court does not reweigh evidence, but "defer[s] to the trial court's unique ability to 'accurately weigh the evidence and judge the demeanor of the witnesses' and take into account the trial court's 'superior view of the entire

---

3       Doe does not contest on appeal the magistrate's finding that reunification did not occur within the statutory timeframe. Indeed, as Doe is incarcerated, it is evident that this did not occur.

situation.'" *Doe*, 144 Idaho at 842, 172 P.3d at 1117 (quoting *Doe v. Roe*, 133 Idaho 805, 809, 992 P.2d 1205, 1209 (1999)). "Findings are competent, so long as they are supported by substantial, albeit possibly, conflicting, evidence." *Roe v. Doe*, 142 Idaho 174, 177, 125 P.3d 530, 533 (2005) (internal quotations omitted) (quoting *Roberts v. Roberts*, 138 Idaho 401, 405, 64 P.3d 327, 331 (2003)). "[T]his Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated." *Roe*, 142 Idaho at 177, 125 P.3d at 533 (internal quotations omitted) (alteration in original) (quoting *Doe I v. Doe,* 138 Idaho 893, 900, 71 P.3d 1040, 1047 (2003)).

*Doe*, 148 Idaho at 246, 220 P.3d at 1065.

Doe contends that she is "not at fault for failing her Case Plan," that the "testimony clearly shows that she substantially completed her Case Plan," and that the "only problem is not having enough time to finish her incarceration and resolve all her legal issues." Doe supports her argument with respect to the case plan by referencing the testimony at the termination hearing, although she provides little or no citation to the record. As a general rule, this Court will not search the record for error. *In re Gibbar*, 143 Idaho 937, 946, 155 P.3d 1176, 1185 (Ct. App. 2006). Error is never presumed on appeal and the burden of showing it is on the party alleging it. *Stewart v. Sun Valley Co.*, 140 Idaho 381, 384, 94 P.3d 686, 689 (2004). Nevertheless, we have reviewed the record and while there is conflicting evidence, it cannot be said that the magistrate's findings are not supported by substantial and competent evidence.

Doe was required to cooperate with the justice system in order to satisfy any pending charges and/or jail time. Doe claims that because she satisfied her pending battery charges and because the probation violation and failed rider did not occur until after the case plan was created, she has completed this requirement "to the best of her ability" as the "Case Plan did not recognize that there would be additional time required to complete this element."

Doe maintains that additional time would allow her to resolve her legal issues. However, Doe's actions compounded her legal problems rather than resolved them. While it is true that the probation violation and the subsequent failed rider did not exist at the time the case plan was created, Doe was on felony probation when the case plan was created and it was her responsibility to follow through with the terms of her probation. Doe was required to "resolve" her legal problems. She was aware of the consequences, should she fail to be successful. Doe repeatedly violated the terms of her probation while in Boise, and her probation officer in Boise, Julie Bryant, testified that she had exhausted her resources there. She was given the option to

7

transfer her probation to Lewiston to see whether she could be successful or to continue in Boise and receive a probation violation. In Lewiston, she again violated the terms of her probation. Thereafter, she was given an opportunity to be successful on a rider. However, she was involved in an altercation with another inmate. Consequently, the district court relinquished jurisdiction and ordered into execution her original sentence of five years incarceration, with two years determinate. Thus, Doe's contention that she needs more time to finish her incarceration and resolve her legal issues is unavailing as Doe's actions resulted in her extended incarceration. *See Idaho Department of Health and Welfare v. Doe*, 148 Idaho 124, 128, 219 P.3d 448, 452 (2009) (acknowledging that while Doe argued that the Department should have given her more time to overcome her methamphetamine addiction, it was not required to do so before moving to terminate her parental rights). The magistrate's finding that Doe did not resolve her legal problems is supported by substantial and competent evidence.

Doe was required to schedule and attend a substance abuse evaluation, follow all of the recommendations for treatment suggested in the evaluation, participate in random drug testing, and remain drug free. While Doe apparently did attend a substance abuse evaluation, the evidence is conflicting as to whether she completed the recommended treatment and ultimately remained drug free. Some evidence suggested that Doe did participate in substance abuse classes, but the Department never received verification of participation and Doe's probation officer in Lewiston, Tabitha Shears, testified that her attendance was "sporadic." Shears testified that Doe was enrolled in a drug and alcohol cognitive behavioral class but was dismissed due to anger management issues. Evidence in the record shows that Doe did participate in random drug testing, which generally yielded negative results. However, Shears testified that Doe admitted to having used methamphetamine. Thus, while the evidence is conflicting, the magistrate's finding that Doe did not complete substance abuse counseling is supported by substantial and competent evidence.

Doe was required to attend, participate in, and successfully complete an approved parenting class and provide verification of completion. She did not complete this requirement. Doe was required to attend scheduled visits with the children, which she did not do consistently. Doe was also required to attend all of the children's doctor, WIC, and other developmental appointments. While Doe did attend one of these visits, there is substantial and competent

8

evidence to support the magistrate's findings that Doe failed to substantially complete these requirements.

Doe was required to maintain stable housing and employment. She was also required to participate in and complete domestic violence and anger management classes. Department case worker, Shari Woodall, testified that she met with Doe to discuss three areas of the case plan "that she still really needed to work on which was employment, housing and her anger management." On cross-examination, Woodall acknowledged that she had made an entry to the Department narrative indicating that Doe "ha[d] completed all but three areas." Woodall testified that when she left the Department at the beginning of December 2008, Doe was enrolled in an anger management class, had an apartment, and was employed. While it does appear from the record that Doe had, at that time, made some progress on her case plan, her inability to comply with the terms of her probation and subsequent failure to be successful on her rider, ultimately determined the fate of her parental status.

The magistrate court found that while Doe had "come close to living in one or two places for a 90-day period, her overall housing record is extremely unstable." The magistrate also noted that Doe had received a large income tax refund, with which she purchased a car and clothing rather than to obtain housing. Between June 2007 and December 2008, Doe was incarcerated, lived in various shelters in Boise, lived with family and friends, lived at the Lewiston Inn, lived in her car, lived at the Hillary Hotel, and lived in an apartment in Lewiston. We recognize that the actions of the parent are severely restricted while incarcerated, and thus focus on Doe's actions when not incarcerated. *See In re Doe*, 146 Idaho at 763, 203 P.3d at 693. Doe testified that the shelters were family friendly. However, there was also testimony that Doe was kicked out of shelters for failure to maintain employment and, in one instance, for engaging in a physical confrontation with another resident. Doe lived at the Hillary Hotel for approximately four months and at the apartment for close to three months. Doe contends that this satisfies the case plan requirement to maintain stable housing. While Doe testified that she had a room at the Hillary Hotel that was "livable" for the children, Probation Officer Shears testified that the hotel was not a "suitable living environment" because it was in a "drug and alcohol infested" area of Lewiston. In addition, Shears testified that while at the Hillary Hotel, Doe's living arrangements were unstable due to the fact that she did not stay in just one room for the entire four months and that the accommodations were not suitable for children. While the two-bedroom apartment that

9

Doe obtained toward the end of 2008 was "suitable" for children, that situation was cut short by Doe's inability to follow the terms of her probation and consequent incarceration.

The magistrate court also found that Doe had not been able to financially provide for her children and that her employment record was very unstable as evidenced by the fact that while in Lewiston she had five jobs in a seven-month period. Between June 2007 and December 2008, Doe had approximately six jobs. Doe testified that while in Boise she obtained a weekend job with Renaissance Staffing. Probation Officer Bryant testified that while Doe informed her that she had submitted applications for employment, employment was never verified while under supervision in Boise. Probation Officer Shears testified that once Doe arrived in Lewiston, she obtained work at Quiznos from May 29, 2008 to June 12, 2008, but was fired due to aggression and anger. Doe testified that she was fired because she "didn't peel the onions right." Shears testified that Doe then made arrangements at the Hillary Hotel to exchange housing for cleaning and landscaping services from June 21, 2008 until October of 2008. Shears testified that she was working "off and on" at the hotel. Doe also obtained employment at The Guest House doing the "graveyard night audit" and worked there from approximately July 15, 2008 until October 7, 2008. While working at the Hillary Hotel and The Guest House, Doe also obtained employment at Rusty's Ranch Café, working as a waitress from approximately July 16, 2008 until September 21, 2008. Neither the hours worked nor the amounts earned were documented. She ultimately obtained full-time employment with Macy's from approximately September 19, 2008 until December 11, 2008, when, again, her progress was cut short by her incarceration.

The magistrate court did not make any specific findings as to completion of domestic violence and anger management classes. The court did find generally, however, that Doe "has a long-term anger problem and does not respond well to authority." Doe testified that she completed a domestic violence course through TurnAround called Helping Healthy Women Recover, which was approved by the Department. She testified that she also completed another course on her rider called Building Healthy Relationships. Doe testified that she participated in an anger management class through Probation Officer Shears in Lewiston. Shears testified that Doe was dismissed the first day of class. Doe was informed that she needed to find another anger management class to attend, which she did through Lewis-Clark State College (LCSC) in Lewiston. Doe did participate in "one to one counseling." Shears testified that while Doe maintained that she was using the tools she was learning, Shears "never saw her use them."

10

While we acknowledge that Doe did make some progress on her case plan, continued progress was dependent upon her ability to follow through with the terms of her probation. Shears testified that she discussed with Doe the need to complete the requirements of probation and her case plan if she wanted to reunite with the children. Shears testified that Doe was "fully aware of her consequences and her actions." Nevertheless, Doe repeatedly violated the terms of her probation and subsequently failed on her rider. The magistrate's finding that Doe has a long-term anger problem and does not respond well to authority is supported by substantial and competent evidence. Doe was removed from multiple classes, various housing facilities, some employment, and, ultimately, her rider due to her anger management issues and her inability to take responsibility for her own actions. Doe's own testimony at the termination hearing supports this conclusion. The State engaged Doe in the following discussion:

**Q:** Okay. So pretty much what I'm hearing you from (sic) then, [Doe] from your first day of testimony to today is that everyone else has not done their job or at fault and you've done everything that you're supposed to have done. Correct? Is that what I'm understanding?

**A:** If that's the way you want to word it. My part --

**Q:** It sounds like everyone else --

**A:** My part, I did. So whether you're crediting your State's ability to do it, that's up to you. I mean I did my part.

It was not the Department's responsibility to complete Doe's case plan for her.[4] Nor were the probation officers obligated to fulfill the terms of Doe's probation. Doe was responsible to work her case plan and comply with the terms of her probation. She failed to do so. While the evidence is conflicting, there is substantial and competent evidence in the record supporting the magistrate court's finding that Doe failed to follow her case plan. *See Doe*, 147 Idaho at 356, 209 P.3d at 653 (concluding that while the case was not as "clear-cut" as most parental termination cases, there was substantial, competent evidence in the record to support terminating parental rights where the parents had failed to comply with the magistrate's orders to complete their case plan); *see also State, Department of Health and Welfare v. Doe*, 145 Idaho 662, 665, 182 P.3d 1196, 1199 (2008) (recognizing that while evidence was conflicting, there was substantial and competent evidence to support magistrate's findings that Doe failed to comply with the case plan where she had seventeen months to do so and only began some compliance in

---

[4] Of course, completion of a case plan is with the assistance of the Department, including reasonable efforts to achieve return of a child and family reunification. *See* I.C. § 16-1621.

11

the last six months by following the terms of her probation); *Doe*, 144 Idaho at 314, 160 P.3d at 753 (concluding that there was substantial and competent evidence upon which to base a termination where Doe did not complete three of the tasks in her case plan and where testimony indicated that while she did what she could in order to complete the case plan, she did not gain what she was supposed to from the completed tasks). Thus, the magistrate court's finding that the children were neglected as defined by I.C. § 16-2002(3)(b), is supported by substantial and competent evidence.

## B. Best Interests of the Child

The magistrate court determined, generally, that termination was in the best interests of the children. The court specifically referenced, as support for that determination, that (1) Doe failed to substantially complete her case plan; (2) Doe is likely to remain incarcerated for a substantial period of time during the children's minority; and (3) it is extremely remote that the family can ever be reunited. The facts and findings, addressed above, that Doe neglected the children were relied upon by the magistrate for the determination that termination was in the best interests of the children and, as noted, are supported by the record.

The magistrate further determined that it was likely Doe would remain incarcerated for a substantial period of the children's minority. While this finding would also provide a basis for termination under I.C. § 16-2005(1)(e), we consider it only as a factor relevant to the best interest determination itself. Doe was incarcerated at various times prior to the termination proceedings and, as noted, presently incarcerated on a five-year sentence with two years determinate. Considering Doe's anger issues, inability to accept responsibility and prior performance on probation and during her rider, the magistrate's finding that she is likely to continue to be incarcerated beyond the determinate term of her sentence is supported by the record.

Additionally, the magistrate found that it was extremely remote that the family could ever be reunited. The State argues that Doe made little effort to provide stability and continuity for the children when she was not incarcerated. The State points to Doe's "anger problem" as an example of thwarting her progress of building a home for the children. The visitation log included in the record does indicate that at the various visits that Doe attended with the children, there were generally hugs and kisses, gifts, playing, and reading. She testified that she loves the children and that she wants them "to come home." Department case worker, Jason Hooper, also

12

testified that there was no question that Doe loves the children. However, as the Idaho Supreme Court has observed, "a child may not live on parental affection alone." *State ex rel. Child v. Clouse*, 93 Idaho 893, 896, 477 P.2d 834, 837 (1970); *see also Doe*, 147 Idaho at 355, 209 P.3d at 652 (noting that "while Appellants love their kids 'dearly,' their efforts to improve their parenting skills were not consistent or long-lasting").

Hooper also testified that he believed termination was in the best interests of the children because they had been "in the system" for over two years and needed to be placed in a permanent, safe, and stable home. *See In Interest of S.W.*, 127 Idaho 513, 518, 903 P.2d 102, 107 (Ct. App. 1995) (holding that Department employee opinions were relevant and admissible as they could "aid the magistrate in determining facts surrounding the care of the children and what would be in their best interests"). The children's foster parent, Lacy Widdison, testified that when the children came to her home they were "badly behaved" and used "monkey type language." Widdison testified that the older of the two children had speech problems and cognitive disabilities, but that now he is a "happy little kid" and is "good with other children now." Widdison testified that when they arrived they were "really unhappy" but now "[t]hey're happy, normal children." She also testified that the children come to them for comfort, that they verbally express love to one another, and that they are very close.

While some of the evidence is conflicting, it cannot be said that the magistrate's determination that termination is in the best interests of the children is not supported by substantial and competent evidence.[5]

### III.
### CONCLUSION

There was substantial and competent evidence to support the magistrate court's decision to terminate Doe's parental rights. The magistrate court's order terminating Doe's parental rights to K.E.P. and K.A.P. is, therefore, affirmed. No costs or attorney fees are awarded on appeal.

Chief Judge LANSING and Judge MELANSON, **CONCUR.**

---

[5] Because we affirm the magistrate court on the statutory ground set forth in I.C. § 16-2005(1)(b), we need not address the court's other findings or Doe's contentions with respect to those findings.