## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 46547

| | |
|---|---|
| In the Interest of: Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) ) |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) Filed: February 8, 2019 |
| Petitioner-Respondent, | ) ) Karel A. Lehrman, Clerk |
| v. | ) ) THIS IS AN UNPUBLISHED |
| JANE DOE, | ) OPINION AND SHALL NOT ) BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Calvin H. Campbell, Magistrate.

Judgment terminating parental rights, affirmed.

Marilyn P. Paul, Twin Falls County Public Defender; Laura Z. O'Connell, Deputy Public Defender, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Respondent, Jane Doe (Mother), appeals from the magistrate's decision terminating Mother's parental rights to her child, J.R. Mother challenges the magistrate's findings that Mother neglected the child and that it is in the child's best interests to terminate Mother's parental rights. We affirm.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Mother moved to Idaho with J.R. to avoid an abusive relationship with John Doe, J.R.'s father (Father). After arriving in Idaho, Mother began a relationship with a registered sex

1

offender and was residing in a motel room with J.R. During this time, the Idaho Department of Health and Welfare (Department) received two child protection referrals based on a concern that Mother was allowing a registered sex offender to have contact with J.R. In September 2016, while J.R. was very ill with strep throat, Mother gave custody of J.R. to neighbors who were also residing in the same motel, one of whom was a registered sex offender. Shortly thereafter, the neighbors took J.R. to the police department, which declared her to be in imminent danger. On September 13, 2016, the Department took custody of J.R. In October 2016, the Department developed a case plan for Mother. The Department petitioned for termination of parental rights in December 2017, by which time J.R. had been in the Department's custody for more than fifteen months.

The magistrate held an evidentiary hearing in August 2018. At this hearing, Mother was represented by legal counsel and testified. Following the hearing, the magistrate terminated Mother's parental rights finding clear and convincing evidence that she had neglected J.R. and that termination of Mother's parental rights is in J.R.'s best interests.[1] Mother timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). The Fourteenth Amendment to the United States Constitution protects this interest. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Because a fundamental liberty interest is at stake, a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* Idaho Code § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006).

---

[1]     The magistrate also terminated Father's parental rights, and that termination is the subject of a separate appeal.

2

On appeal, this Court examines whether the magistrate's decision terminating parental rights is supported by substantial and competent evidence, which means evidence a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The substantial evidence test also requires a greater quantum of evidence in cases, such as this case, where the magistrate's findings must be supported by clear and convincing evidence, instead of a mere preponderance. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Further, objectively supportable grounds must support the magistrate's termination decision. *Doe*, 143 Idaho at 346, 144 P.3d at 600. This Court is required to conduct an independent review of the record, but it must draw all reasonable inferences in favor of the magistrate's judgment because the magistrate has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive, and to judge character. *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010).

## III.

## ANALYSIS

### A. Statutory Grounds for Termination of Parental Rights

Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Section 16-2005 of the Idaho Code permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Section 16-2002(3)(b) defines "neglect" for purposes of terminating parental rights. Under this section, neglect includes any conduct defined by I.C. § 16-1602(31). Neglect also occurs when a parent has failed to comply with the court's orders or the case plan in a Child Protective Act case, and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months. I.C. § 16-2002(3)(b)(i), (ii). Failure to comply with the case plan and the court's orders mandating such compliance can form the basis

3

for neglect as defined in I.C. § 16-2002(3)(b). *Idaho Dep't of Health & Welfare v. Doe*, 148 Idaho 832, 836, 230 P.3d 442, 446 (Ct. App. 2010). "[T]he trial court must find that the parent is responsible, whether directly or indirectly, for non-compliance with the requirements of the case plan." *Idaho Dep't of Health & Welfare v. Doe*, 161 Idaho 596, 600, 389 P.3d 141, 145 (2016).

As statutory grounds for termination, the magistrate concluded Mother neglected J.R. by failing to complete the case plan. *See* I.C. § 16-2002(3)(b)(i). Specifically, the magistrate found that Mother "failed multiple times to complete the most basic elements of the plan" and "failed to complete almost all aspects of her case plan." In support, the magistrate found, among other things, that Mother failed to establish safe, stable housing; to demonstrate financial stability; and to address her mental health issues.

Although Mother challenges the magistrate's conclusion of neglect, she does not directly challenge the specific finding that she failed to complete her case plan. Instead, Mother simply attempts to characterize as favorable certain limited facts that gave rise to the Department originally taking custody of J.R. For example, Mother attempts to characterize living in a motel with J.R. and giving custody of J.R. to the neighbors when Mother needed a break from parenting as "providing" for J.R. Mother's characterization of these facts is both unpersuasive and fails to refute the magistrate's finding that Mother failed to complete her case plan.

An important finding by the magistrate, which Mother ignores on appeal, is that she failed to establish safe, stable housing. Although Mother at one point appeared to be making progress establishing an appropriate home, she ultimately failed to complete this task. When the Department took custody of J.R. in September 2016, Mother was residing in a motel room. After the case plan's adoption, Mother rented an apartment; however, she allowed her boyfriend, who has a drug habit and gang affiliations, to move into the apartment. Then, she and her boyfriend moved hours away from J.R.'s foster home, despite counseling from the Department that a move out of the area would impede Mother's ability to follow the case plan. Later, Mother moved back into the area to escape the boyfriend's abuse, but she lacked housing. As a result, Mother was residing in a domestic abuse shelter at the time of the termination hearing. As the magistrate noted, Mother was "essentially homeless" at the start of her case plan and remains "functionally homeless."

Another important finding Mother ignores is that she failed to demonstrate financial stability. While there was some proof Mother receives a "death benefit," social security

4

disability benefits, and food stamps, Mother did not learn about finances and budgeting as the case plan required. Consequently, Mother has "no financial stability" and "no ability to manage the income she does have." Importantly, Mother's lack of financial stability impedes her ability to establish and maintain safe and stable housing. Substantial and competent evidence supports both the magistrate's findings that Mother failed to establish a stable home and also failed to attain financial stability.

While ignoring these important facts, Mother essentially acknowledges her failure to complete her case plan by asserting she had "difficulty following her case plan largely due to her disability," which she describes variously as "intellectual," "developmental," and "cognitive" in addition to "mental health" problems and "post-traumatic stress disorder."[2] Despite her disabilities, however, Mother argues she is "capable of being a suitable parent if she has the supportive services which can be offered by the Department." These arguments ignore that the case plan affirmatively required Mother to address these disability issues and that the Department offered Mother multiple opportunities to do so. The Department identified several available services for Mother and repeatedly communicated with her about those services, including services available to her when she moved out of the area. Specifically, the social worker testified that she was aware of Mother's disabilities and made a concerted effort to ensure Mother was aware of the available services.

Moreover, as the magistrate noted, Mother never requested any special services to treat her disabilities, and she did not offer any evidence at the termination hearing of any supportive service that would enable her to carry out her parental responsibilities. Mother had the right to present such evidence; Idaho Code § 16-2005(6) provides: "If the parent has a disability . . . the parent shall have the right to provide evidence to the court regarding the manner in which the use of adaptive equipment or supportive services will enable the parent to carry out the responsibilities of parenting the child." *See also Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 509, 260 P.3d 1169, 1180 (2011) (discussing I.C. § 16-2005(6)). Absent any evidence that

---

[2] Mother raises this argument in the context of her claim that the magistrate erred in concluding Mother abandoned J.R. The magistrate's reference in its memorandum decision to abandonment, however, relates only to Father, who had no contact with J.R. for the three years preceding the Department's custody of her. The magistrate did not conclude Mother abandoned J.R. Accordingly, we construe Mother's argument, which suggests the magistrate failed to consider Mother's disability issues, as a challenge to the magistrate's finding of neglect.

Mother requested special services or otherwise identified supportive services that would have enabled her to complete her case plan, we cannot conclude that the magistrate failed to consider Mother's disabilities, particularly because substantial and competent evidence supports the magistrate's finding that Mother failed to avail herself of supportive services the Department specifically identified for her. *Id.*

We do note that, while Mother failed to avail herself of various mental health and cognitive treatment opportunities, she did complete domestic abuse counseling. Unfortunately, Mother failed to demonstrate any skills she may have learned from that counseling. Despite counseling, Mother developed and continued an abusive relationship for a significant portion of the time she should have been completing her case plan. The magistrate attributed Mother's case plan failures to her abusive relationships, noting these relationships caused her to be uncooperative with the Department workers, which in turn impeded her ability to stabilize her finances, to establish appropriate housing, and to obtain treatment for her disabilities.

We conclude that substantial and competent evidence supports the magistrate's findings that Mother neglected J.R. by failing to complete the case plan. Further, there is no dispute that the Department has had custody of J.R. continuously for more than fifteen months preceding the termination hearing. Accordingly, the magistrate correctly concluded that there is a statutory ground for terminating Mother's parental rights.

**B.    Best Interests of the Child**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

6

Mother argues the magistrate erred in finding that termination of Mother's parental rights is in J.R.'s best interests. We disagree. The magistrate properly considered and found numerous factors supporting its conclusion that termination is in J.R.'s best interests. As noted above, Mother failed to establish stable housing; she is unable to provide financially for J.R.; she failed to take advantage of services to treat her disabilities; and she continues to enter into abusive relationships that would jeopardize J.R.'s safety.

Regarding J.R., the magistrate found she had been in foster care for more than two years by the time of its decision. During this time, the magistrate found J.R. "has made significant progress in her current placement." Both the guardian ad litem and the Department social worker testified that termination, in their opinion, is in J.R.'s best interests. According to their testimony, J.R. is thriving in foster care and has shown positive changes in her health, demeanor, and behavior; is improving in school as a result of her foster parents' involvement and stable environment; and has a strong bond with her foster parents.

Mother does not challenge these findings; rather, she notes that she and J.R. "have a close emotional bond." The magistrate noted this bond also, but it concluded that J.R. "cannot live by love alone." It is well-established that "in addition to love and affection and the satisfaction of [her] physical needs, a child requires moral guidance and training to allow [her] to grow into a well-adjusted, normal adult." *State ex rel. Child v. Clouse*, 93 Idaho 893, 896, 477 P.2d 834, 837 (1970). Unfortunately, because Mother cannot provide for J.R.'s needs, termination of Mother's parental rights is in J.R.'s best interests.

## IV.
## CONCLUSION

Substantial and competent evidence supports the magistrate's conclusions that Mother neglected J.R. by failing to complete the case plan; J.R. has been continuously in the Department's custody for more than fifteen months; and termination of Mother's parental rights is in J.R.'s best interests. Accordingly, the judgment terminating Mother's parental rights is affirmed.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.