IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 37600

| | | |
|---|---|---|
| IN THE MATTER OF JANE DOE, A CHILD UNDER EIGHTEEN YEARS OF AGE. | ) ) ) | 2010 Opinion No. 52 |
| _____ | ) | Filed: August 4, 2010 |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, and GUARDIAN AD LITEM, | ) ) ) | Stephen W. Kenyon, Clerk |
| Petitioners/Respondents, | ) ) | |
| v. | ) ) | |
| JANE DOE I, | ) ) | |
| Respondent/Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Howard D. Smyser, Magistrate.

Order terminating parental rights, affirmed.

Marilyn B. Paul, Twin Falls County Public Defender, Robin M. A. Weeks, Deputy Public Defender, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent, Idaho Department of Health & Welfare.

Jamie A. LaMure, Kimberly, for respondent, guardian ad litem.

_____

GRATTON, Judge

Jane Doe I (Doe) appeals the magistrate's order terminating her parental rights as to her child, K.Q. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2008, Doe gave birth by cesarean section to a girl, K.Q. She was born with only one kidney, and following her birth was faced with health problems such as breathing and eating difficulties. Both Doe and her daughter stayed in the hospital for five days. During this time, the nurses and doctor became concerned with Doe's ability to care for K.Q. They observed

1

that not only did Doe have difficulty caring for K.Q., such as holding, feeding, and changing her diapers, Doe resisted these responsibilities and passed them off to others. Doe did not want K.Q. in her bed, and Doe wanted K.Q. quiet so she could rest. A caseworker and an officer arrived to investigate following a call from a doctor who was concerned for K.Q. On June 10, 2008, the officer declared K.Q. to be in immediate danger, and a petition was filed asserting that K.Q. was neglected under Idaho Code § 16-1602 and should be placed in shelter care, which was granted.

On July 31, 2008, the magistrate approved a case plan that the parties agreed to follow. Doe and K.Q.'s father, D.A., had ended their relationship prior to K.Q.'s birth, but he agreed to the case plan. Doe lived with her mother, M.A., and her stepfather, B.A. K.Q. stayed in foster care throughout the life of the case plan, and changed foster parents one time.

On June 22, 2009, the State filed a petition to terminate the parental rights of Doe and D.A. The trial was held on February 17 and 18, 2010. D.A. consented to the termination of his parental rights if Doe's rights were terminated. On April 1, 2010, the magistrate granted the State's petition and terminated the parental rights. D.A. does not appeal. Doe appeals.

## II.

## ANALYSIS

In an action to terminate parental rights, due process requires this Court to determine if the magistrate's decision was supported by substantial and competent evidence. *State v. Doe*, 143 Idaho 343, 345, 144 P.3d 597, 599 (2006). Substantial and competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. at 345-46, 144 P.3d at 599-600. This Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Doe v. Doe*, 148 Idaho 243, 246-47, 220 P.3d 1062, 1064-65 (2009). We conduct an independent review of the record that was before the magistrate. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). *See also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001(2). Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-

2

child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence. *Id.* Idaho Code § 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

In this case, the magistrate concluded, among other things, that Doe's parental rights should be terminated for neglect. Idaho Code § 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(25),[1] as well as situations where the "parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9)." The time standard established by I.C. § 16-1629(9) is defined as when "a child is placed in the custody of the department and was also placed in out of the home care for a period not less than fifteen (15) out of the last twenty-two (22) months from the date the child entered shelter care."

## A.    Neglect

Doe argues the magistrate erred in finding Doe neglected K.Q. under I.C. § 16-2002(3)(b).[2] As noted, I.C. § 16-2002(3)(b) provides that neglect is established if the parent fails to comply with the case plan and reunification of the child with the parent does not occur within the time limit set by I.C. § 16-1629(9). Doe concedes the magistrate correctly found K.Q. was in

---

[1]      Idaho Code § 16-1602(25) provides, in pertinent part, that a child is "neglected" when the child "is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them."

[2]      Because the Court affirms on the I.C. § 16-2002(3)(b) grounds, we need not address Doe's argument that the magistrate erred in finding neglect under I.C. § 16-2002(3)(a).

foster care for more than the time limit set by I.C. § 16-1629(9). On appeal, Doe argues that the magistrate erred in finding that she did not complete the case plan.

On July 31, 2008, the magistrate adopted the case plan agreed to by the parties. The case plan identified areas of concern in restoring K.Q. to Doe's custody and listed a desired result for each concern. The plan then delineated specific tasks to achieve the results. In its decision, the magistrate summarized the evidence as it pertained to each area in the case plan and discussed the specific tasks that Doe was required to perform. The magistrate found "[Doe] has failed to comply with the court's order on numerous portions of her case plan."

The magistrate found Doe failed to participate in a psychological evaluation as required in the case plan. While Doe met with Dr. Tyson and took the tests he offered, the court found she provided responses that were so deceptive that they invalidated the testing. Dr. Tyson gave Doe a personality inventory to understand Doe's willingness to be forthright with the examiner. He stated that Doe's level of denial was sufficient to invalidate the inventory. Dr. Tyson explained:

> But, her level of denying shortcomings was remarkable. I'm not saying that it's a reflection of any kind of negative character flaw. I think it was a very psychologically naïve attempt to keep -- sometimes people attempt to keep people from learning more about them. The problem was that we needed her to be forthright in this evaluation and she wasn't, but only on the personality inventory. She was cooperative with the other measures.

Doe contends she did not violate the case plan during her psychological evaluation and was merely in denial about her personal shortcomings. The purpose of the psychological evaluation was for the examiner to learn about the patient and make recommendations. Doe's lack of forthright answers prevented the examiners from learning the information needed, and the magistrate's finding that Doe did not fully complete the required psychological testing, is supported by the evidence.

To achieve the case plan's desired result of determining that Doe could financially provide for K.Q., the case plan required: (1) Doe's family to "provide verification of financial stability to the Department of Health and Welfare"; (2) Doe to "develop a budget to address the financial needs of herself and her daughter"; and (3) Doe to secure "a safe, stable, sanitary home for herself and her daughter." The magistrate found Doe's resources, which were limited to Social Security disability payments of $400 per month, were insufficient for her and K.Q. The

court recognized that Doe's parents provided assistance with housing and bills. The court considered this help appropriate and found that with combining resources the family had the necessary financial ability to provide for K.Q. The court emphasized, however, that B.A.'s income, the only income other than disability payments, fluctuated based on his employment. The court stated that the one task Doe could perform, with no prospects for employment to ensure continued financial stability, was to create and live by a budget and Doe failed to consistently perform this task. Doe argues that because the magistrate found that Doe and her parents' financial resources were sufficient, all further criticisms related to mere "tangential" details.

Demonstrating financial stability was a significant issue in the case plan. The case plan required Doe to provide verification of the family's financial stability and to develop a budget for the needs of her and her daughter. M.A. testified that she refused to provide financial information to the Department because she did not think it would help Doe obtain custody of K.Q. Doe admitted that she stopped preparing a budget because she felt it would only be used as evidence against her. Bristol, Doe's second caseworker, testified that none of the reports Doe submitted satisfied the requirement of preparing a budget, because they did not identify the amount of income and just included a stack of receipts, which required Bristol to sort through them. Bristol testified she only received confirmation that Doe was receiving disability benefits the morning of the trial. The magistrate's finding that Doe did not complete the financial aspects of the case plan is supported by the evidence.

The magistrate found Doe failed to provide a safe and stable home because of concerns regarding domestic violence. Doe argues that the evidence of domestic violence at trial did not support a finding that Doe's home was neither safe nor stable. Doe asserts that the two cases cited by the magistrate concerned more egregious domestic violence. *See In re Doe*, 143 Idaho 343, 144 P.3d 597 (2006); and *Doe v. State, Department of Health and Welfare*, 122 Idaho 644, 837 P.2d 319 (Ct. App. 1992). It is for the trial court to weigh the evidence regarding domestic violence, including the circumstances, frequency, and severity in assessing household safety and stability. The relevant inquiry here is whether Doe failed to provide a safe and stable home, as the case plan required, because of the threat of domestic violence.

The magistrate was concerned with Doe's criminal history that included three battery convictions. Two offenses occurred while she was a juvenile, and the other was committed in

September 2008, after the filing of the child protective order and approval of the case plan. The most recent battery occurred when Doe physically confronted her stepfather. Doe testified that she fought with her stepfather who called the police, at which time she was arrested. A no-contact order was entered, which required her to find an alternative living arrangement until the order expired. Doe had insufficient financial resources to pay for any other living arrangement, and temporarily moved in with her sister. Doe testified that her sister had a problem with drug abuse and that K.Q. should not be exposed to her.

The family's additional hostile behavior towards the social workers assigned to the case reinforced the magistrate's concern with the safety and stability of Doe's home. The caseworkers that were exposed to Doe and her family at their home testified to hostile and threatening behavior. In one instance, Burgess, a caseworker that supervised K.Q.'s visits, called 9-1-1 because she did not feel safe when the family screamed at her, called her names, and refused to let her take K.Q. After this incident, Doe's visits with K.Q. were moved to the Department office. M.A. acknowledged that there had been approximately eight calls to 9-1-1 over the previous two years from their residence. However, B.A. claimed that the family was not hostile to Burgess and, instead, Burgess hit Doe. Substantial evidence supports the magistrate's concerns regarding domestic violence.

The case plan required Doe and D.A. to "formally develop a custody agreement to include visitation." The court found that this was not completed. On appeal, Doe acknowledges this task was not completed, but complains the task was only important if she had custody of K.Q. Doe's argument fails to appreciate that the purpose of this task was to resolve disputes between the parents, in the event custody was returned to them, and set the stage for providing K.Q. with a stable life. This was an important task in planning for K.Q.'s future that Doe failed to complete.

The case plan required Doe to "participate in parenting education provided by South Central District Health." Doe instead took parenting programs offered by Magic Valley Ministry Center. Doe did not obtain the Department's approval for substituting the parenting class. Doe testified South Central District Health did not have a parenting class to take, so she looked for another. The magistrate found the Magic Valley Ministry Center's program was different than the program Doe was required to take and that she could not use it as a substitute. Bristol testified that she never received confirmation that Doe had completed the parenting classes she

was taking at Magic Valley Ministry Center, and that Doe did not incorporate any learned parenting skills into caring for K.Q. Doe testified she completed the class and gave a certificate of completion to the Department, but conceded that she never completed the budgeting class because of an argument with an instructor. "Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of the witnesses and to weigh the evidence presented." *Total Success Investments, LLC v. Ada County Highway District*, 148 Idaho 688, 693, 227 P.3d 942, 947 (2010) (citing *Desfosses v. Desfosses*, 120 Idaho 354, 356, 815 P.2d 1094, 1096 (Ct. App. 1991)). In addition, several witnesses testified that any instruction that was given to Doe to upgrade her parenting skills was either rejected or not adopted in the observed parenting of K.Q.

The magistrate's findings that Doe failed to complete the case plan and K.Q. was neglected as defined by I.C. § 16-2002(3)(b), are supported by substantial and competent evidence.

**B.     Best Interest of the Child**

"When a judge finds a statutory ground, such as neglect, he or she must then decide if termination of parental rights is in the best interests of the child[]." *Doe v. Department of Health and Welfare*, 141 Idaho 511, 516, 112 P.3d 799, 804 (2005). The magistrate found, by clear and convincing evidence, that K.Q.'s best interest was served by terminating Doe's parental rights.

First, Doe argues the magistrate erred in its finding that terminating her parental rights was in the best interests of K.Q., because it is uncontroverted that she loves K.Q. The Idaho Supreme Court has observed, "a child may not live on parental affection alone." *State ex rel. Child v. Clouse*, 93 Idaho 893, 896, 477 P.2d 834, 837 (1970); *see also Department of Health and Welfare v. Doe*, 147 Idaho 353, 355, 209 P.3d 650, 652 (2009) (noting that "while Appellants love their kids 'dearly,' their efforts to improve their parenting skills were not consistent or long-lasting").

Second, Doe contends the magistrate failed to appreciate that she is disabled and had access to supportive services. Idaho Code § 16-2005(6) states:

> If the parent has a disability, as defined in this chapter, the parent shall have the right to provide evidence to the court regarding the manner in which the use of adaptive equipment or supportive services will enable the parent to carry out the responsibilities of parenting the child. . . .

To establish a court erred in considering the parent's disability, a parent must point to evidence presented of supportive services which will enable the parent to carry out the responsibilities of

7

parenting the child. *See Idaho Department of Health and Welfare v. Doe*, __ Idaho __, __, 233 P.3d 96, 102 (2010). The magistrate held that Doe failed to present evidence that she suffered a mental impairment that limited a major life activity, or how adaptive equipment or supportive services would enable her to carry out the responsibilities of parenting K.Q. Doe highlights Dr. Tyson's testimony that she had a learning disability and met the diagnostic threshold for Attention Deficit Hyperactivity Disorder and his recommendation for full-time supervision to enable parenting. Doe argues that because she was recently awarded Social Security disability payments she "will now possibly qualify for specific in-home services which could help [her] with all the various tasks of her daily life." However, the evidence Doe points out in the record is only evidence of Doe collecting payments. Doe did not present evidence of any specific supportive services that she qualified for, had been approved for, or that those supportive services could sufficiently aid her in parenting.

Third, Doe argues the magistrate weighed the evidence incorrectly. "This Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated." *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009) (internal quotations omitted) (quoting *Matter of Aragon*, 120 Idaho 606, 608, 818 P.2d 310, 312 (1991)). After K.Q.'s birth, Doe had twenty months to prepare to care for her prior to the trial. Burgess testified that after supervising sixty-four visits between Doe and K.Q., Doe was not able to adequately parent. Wallace, a state employee charged with supervising visitations and teaching parenting skills, testified that while Doe was initially receptive to learning, Doe became more concerned with dressing K.Q. up, and would become hostile if redirected to the parenting skills she was supposed to learn. In Wallace's opinion, Doe did not understand K.Q.'s immediate needs or developmental stages, and Doe never demonstrated she could feed, burp, or swaddle K.Q. Wallace testified she was concerned for K.Q.'s safety during a visit because Doe left K.Q. unattended on a changing table when K.Q. was learning to roll over. Bristol observed K.Q. in foster care, and during visitation with Doe. Bristol described K.Q. with Doe as "stoic, serious, discontent, unhappy, and just nonpacified." Bristol described K.Q. in foster care as "joyful, silly, exploratory, happy, content baby." Bristol testified that she did not feel Doe was capable of safely and effectively parenting K.Q. because she could not improve her parenting skills over the course of the case plan. She also testified that Doe had not established a connection with K.Q. and that no purpose would be served with additional time or

services.  The following questioning of Doe shows even she realized that she was not ready to care for K.Q.:

> Q. Okay.  Do you feel at this time like you are ready to take care of [K.Q.] if she went home with you today?
> A. Not at this moment.

The goals of permanency, and the needs of K.Q. as a fast-growing child, are not met by preserving Doe's parental rights with the hope she could someday be capable of caring for K.Q. Substantial evidence supports the magistrate's decision that the best interest of K.Q. is served by termination of Doe's parental rights.

## III.

## CONCLUSION

The record reflects substantial and competent evidence supporting the magistrate's decision to terminate Doe's parental rights.  The magistrate's order terminating Doe's parental rights to K.Q. is, therefore, affirmed.  No costs or attorney fees are awarded on appeal.

Judge GUTIERREZ and Judge MELANSON, **CONCUR.**