**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39798**

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JANE (2012-02) DOE. | ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) | 2012 Unpublished Opinion No. 540 |
| | ) | Filed: June 27, 2012 |
| Petitioner-Respondent, | ) ) | |
| and | ) | Stephen W. Kenyon, Clerk |
| GUARDIAN AD LITEM, | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Respondent, | ) ) | |
| v. | ) ) | |
| JANE (2012-02) DOE, | ) ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cathleen MacGregor-Irby, Magistrate.

Decree terminating parental rights, <u>affirmed</u>.

Alan E. Trimming, Ada County Public Defender; Adam C. Kimball, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mary Jo Beig, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Jane Doe appeals from the order of the magistrate court terminating her parental rights to her youngest son (hereinafter Son), who was twenty-three months old at the time of trial. Doe asserts that the order was not supported by substantial and competent evidence of neglect and that termination was not in the best interests of Son. We affirm.

# I.

## BACKGROUND

Doe has five children, including Son.[1]  Between 1999 and 2012, thirty-one child protection referrals regarding Doe and her children were made raising concerns of physical abuse, physical neglect, medical neglect, domestic violence, sexual abuse, substance abuse, and a hazardous home environment.  In 2006, three of Doe's older children were placed in foster care as a result of neglect, and Doe was provided treatment for substance abuse through various inpatient and outpatient treatment programs.  In 2008, Doe's parental rights to one of her children were terminated.  Doe gave birth to Son in April 2010, at which point the 2006 child protection case was still ongoing.[2]  Following the birth of Son, the Department of Health and Welfare (hereinafter Department) provided Doe with access to preventative services encouraging family preservation in the home in an effort to prevent Son from being placed in foster care.

In April 2011, shortly after Son's first birthday, Doe was involved in an altercation with her sister and arrested for battery, leaving no one with legal authority to care for Son.[3]  As a result, Son was declared to be imminent danger, and eventually placed in foster care.[4]  Law enforcement officers reported that Doe was intoxicated at the time of arrest, and Doe admitted that she had been drinking and taking pain medication.  The Department assigned the new child protection case involving Son to April Crosby, the same case manager and social worker who had been working with Doe since 2007 as part of the previous child protection case.

On June 24, 2011, the court approved a case plan designed to prepare Doe to regain custody of Son.  The case plan called for Doe to:  (1) complete an updated substance abuse evaluation and follow all recommendations, including random drug testing; (2) work with her support system and treatment provider to develop a relapse prevention plan and provide the

---

[1]  Son's father consented to the termination of his parental rights, and is not participating in this appeal.

[2]  As of February 2012, one of Doe's children remained in foster care, and another had "aged out" of care.

[3]  Doe testified that the battery charge was eventually amended to a charge of disturbing the peace.

[4]  It appears from the record that Doe waived the shelter care hearing and consented to the Department's temporary custody of Son pending a case plan hearing.

Department with a copy; (3) complete psychological and neuropsychological testing and follow all recommendations; (4) obtain and maintain legitimate income or employment and provide proof to the Department; (5) obtain and maintain adequate housing; (6) participate in services addressing Son's special needs including the Infant Toddler Program, and follow all child care recommendations; and (7) attend Son's medical and therapy appointments, communicate with providers to understand Son's needs, and follow all recommendations.

On October 28, after a review hearing, the court made the following findings:

> [Doe] has not demonstrated the ability to protect her children in the past under similar circumstances and family conditions. Three of [Doe]'s children entered foster care in March 2006 due to issues of homelessness, substance abuse and domestic violence within her family. [Doe] does not have adequate resources to meet the needs of her children and is currently struggling to meet her own needs.
> [Doe] completed a substance abuse evaluation and a psychological, neuropsychological evaluation. [Doe] has not engaged in treatment for substance abuse and mental health despite referrals for services. . . . [Doe] ceased participation in services through the Infant Toddler Program, resulting in [Son's] file being closed. [Doe] has been provided with [Son's] appointment information and assistance with transportation including gas vouchers and directions. [Doe] has not attended any of [Son's] assessments or appointments through the Elk's Pediatric Abilities Clinic.

The court approved the Department's plan for termination of parental rights and adoption as the permanent plan for Son. Shortly thereafter, the Department filed a petition for the termination of Doe's parental rights based on three counts of neglect stemming from Doe's unaddressed substance abuse and mental health issues, instability in housing and employment, and inability to provide for Son's medical, mental health and developmental needs. As of the time of trial, in March 2012, Doe had not fully complied with any of the case plan objectives, and the magistrate entered an order terminating her parental rights based on neglect and the best interests of Son. Doe appeals.

## II.

## ANALYSIS

A parent has a fundamental liberty interest, protected by the Fourteenth Amendment of the United States Constitution, in maintaining a relationship with his or her child. *Idaho Dep't of Health & Welfare v. Doe II*, 150 Idaho 36, 41, 244 P.3d 180, 185 (2010); *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009). Therefore, the requisites of due process must be met

3

when the Department intervenes to terminate the parent-child relationship. Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence. *Doe*, 146 Idaho at 761, 203 P.3d at 691. Where a trial court has expressly identified and applied a clear and convincing standard, an appellate court will not disturb the trial court's findings unless they are not supported by substantial and competent evidence. *State v. Doe*, 144 Idaho 534, 535, 164 P.3d 814, 815 (2007). Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *In re Doe*, 143 Idaho 343, 345-46, 144 P.3d 597, 599-600 (2006). Since "the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties," this Court will draw all reasonable inferences in favor of that court's judgment. *Doe II*, 150 Idaho at 41, 244 P.3d at 185 (internal quotation and citation omitted).

Idaho Code § 16-2005 enumerates several grounds for termination of the parent-child relationship, including parental neglect of the child. The statute authorizes termination only if an enumerated ground for termination exists and termination is in the child's best interests. I.C. § 16-2005(1). A child may be found to be "neglected" under any of several statutory definitions of neglect. *See* I.C. § 16-2002(3)(a) (incorporating the definitions of the term "neglected" in Idaho Code § 16-1602(25)(a)-(d)). As relevant to the allegations in the present case, a child is "neglected" if the child is "without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents . . . or their neglect or refusal to provide them." I.C. § 16-1602(25)(a).

A. Neglect

On appeal, Doe asserts the magistrate's findings of neglect were not supported by clear and convincing evidence. The magistrate made findings of neglect based on: (1) Doe's inability to provide for Son's special needs; (2) Doe's inability to provide housing or sufficient income to support Son; and (3) Doe's failure to complete recommend mental health and substance abuse programs.[5] With respect to each finding, the magistrate expressly identified and applied the

---

[5] Although the magistrate court's Memorandum Decision and Order entered March 15, 2012, containing its principal findings and conclusions, did not make an explicit finding that Doe's acts and omissions described therein amounted to neglect of Son, such a finding is implicit in the document, which concluded that Doe's parental rights should be terminated. Further, an

clear and convincing standard, thus, we review to determine whether the findings were supported by substantial and competent evidence

### 1. Ability to provide for Son's special needs

With respect to Son's special needs, the magistrate stated, in part:

> The clear and convincing evidence before this court is that [Doe] does not appreciate or understand the special needs that [Son] has. [Doe] showed no interest in enrolling [Son] in the Infant Toddler Program or participating in his therapy appointments.
>
> [Doe] does not have any of her five children in her care. [Doe] has had interventions and supports put in place to help her become a better parent. The clear and convincing evidence is that [Doe] cannot parent this child now, and there is no reason to believe that she will be able to in the future.

Doe asserts that the magistrate erroneously concluded that she was unwilling or unable to provide for Son's special needs because it was difficult for her to attend Son's therapy appointments, because her attendance at the appointments was not necessary, and because the Department could have done more to help her understand and provide care for Son's special needs. Doe does not dispute that Son exhibited developmental delays requiring special care. To address Son's special needs, Doe's case plan directed her to "participate with her son's providers including, but not limited to, the Infant Toddler Program . . . follow all recommendations in caring for her child . . . attend her son's medical and[/]or therapy appointments and . . . communicate with providers to understand her son's needs." Doe was given two referrals to enroll Son in an in-home therapy program through the Infant Toddler Program, which would have included individualized "parent coaching" to teach Doe to address Son's special needs. However, Doe did not participate in the program or provide the necessary authorization for his enrollment. As a result, Son was removed from the program, and Doe and Son were not able to participate in the recommended programming in Doe's home. Son was enrolled in an alternate out-of-home program which required additional transportation from his daycare center at least two days per week for physical, occupational, and speech therapy appointments. Although the Department informed Doe about the therapy appointments, invited her to attend, and provided her with a weekly gas voucher, Doe did not attend any of the appointments. Crosby expressed

---

explicit finding of neglect is contained in the magistrate court's subsequently issued Findings of Fact, Conclusions of Law and Decree as to Mother, entered March 29, 2012.

her opinion that Doe did not understand Son's needs and would not continue the necessary treatment if Son was returned to her care. While Doe attempts to place the blame for her failure to participate on the Department and the foster parents, for what she describes as their failure to include her in Son's therapy progress updates, it is more appropriately attributable to her own lack of initiative. The evidence showed that Doe did virtually nothing to comply with this component of the case plan or to enable herself to understand and address Son's developmental delay and special needs. There is substantial and competent evidence to support the magistrate's findings that Doe was unwilling and unable to care for Son's special needs.

### 2. Inadequate housing and employment

The magistrate concluded that Doe was unable to provide housing for herself and Son and that "the prospect that she will be able to do so in the future is not realistic and probably impossible." The magistrate similarly concluded that Doe "cannot independently support herself . . . let alone provide an income sufficient to support her and her child." Doe does not dispute that she was unable to provide for Son financially or that she relied on family members to provide her with housing. Instead, Doe asserts that in light of the support she was receiving from her family, the magistrate erred by considering her inability to *independently* provide housing and financial support for Son, and that absent a finding that Son was "negatively impacted," her inability to provide housing and financial support is insufficient to demonstrate neglect. However, a decision to terminate parental rights based on a finding of neglect does not require the court to make a finding of actual harm. *Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 508, 260 P.3d 1169, 1179 (2011). *See also In re Cheatwood*, 108 Idaho 218, 220, 697 P.2d 1232, 1234 (Ct. App. 1985) ("The termination statutes of this state exist not merely to alleviate harm but to prevent it."). Instead, when determining whether neglect exists under Idaho Code § 16-1602(25)(a), the focus is whether the child is without proper *parental* care and control. A parent's inability to provide sufficient and stable income and housing is certainly relevant to this determination. *See, e.g.*, *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 644, 650, 273 P.3d 685, 691 (2012); *In re Doe*, 149 Idaho 401, 407-08, 234 P.3d 725, 731-32 (2010); *Idaho Dep't of Health & Welfare v. Doe*, 148 Idaho 832, 838, 230 P.3d 442, 448 (Ct. App. 2010).

The evidence presented at trial demonstrated that over the previous five years, Doe had been dependent on others for housing, and that Doe's living arrangements during the year

6

preceding trial had been unstable. In April 2011, Doe was living with her sister, whom she allegedly battered. Next, she lived with her brother, but she moved shortly after a drive-by-shooting occurred at his residence in August. After moving out of her brother's house, she lived with her father for a period of time between September and November. Finally, she moved into her grandmother's two-bedroom apartment, where she was living at the time of trial. There, the two bedrooms were occupied by Doe's grandmother and Doe's aunt, so Doe slept on the couch. Crosby testified that there was no room for Son in the apartment. Crosby indicated that, in her opinion, Doe had failed to obtain and maintain housing free of health and safety hazards with sufficient space to meet her needs and Son's needs. Furthermore, Crosby expressed concern that Doe was "dependent on the kindness" of others for any housing at all, and thus, that she could be forced to move at any time, leaving her with no place else to go.

Regarding Doe's employment history, the evidence presented at trial indicated that Doe's employment over the previous five years had been inconsistent. The department was unable to verify any employment after 2009. Prior to trial, Doe reported that she was working for her brother's business, but she did not provide any verification of that employment or income. At trial, Doe testified that she received $125 each week in addition to lodging for care she provided to her grandmother. However, she again did not provide any verification of the income. Furthermore, even if Doe had verified an income of $125 per week, such a limited income would not be sufficient to support herself and Son financially.

We conclude that there was substantial and competent evidence that the housing provided by Doe's family was inadequate and unstable, that she did not have the ability to independently obtain stable and suitable housing, and that she was unable to provide an income sufficient to support either herself or Son.

### 3.     Substance abuse and mental health issues

Next, Doe asserts that there was insufficient evidence to support a finding of neglect based on her substance abuse and mental health problems, and that the magistrate erred by considering her failure to complete treatment for these issues absent such evidence.

7

Doe's case plan directed her to complete a substance abuse evaluation, follow all recommendations, including random drug testing,[6] and develop a relapse prevention plan. Doe participated in a substance abuse evaluation with a counselor on October 13, 2011. Based on Doe's history of substance abuse, the counselor concluded that Doe met the criteria for both alcohol and amphetamine dependence, but indicated that both conditions were in sustained full remission. Nevertheless, the counselor concluded:

> [Doe] expresses willingness to enroll and participate in treatment and understands she has substance use disorder problems. [Doe] has extensive history of drug abuse . . . . [Her] ability to deal with dysfunctional family dynamics will be successful only with support and scheduled treatment contacts. She will need to review her relapse dynamics and develop strategies for ongoing sober support. [Doe] does not have an adequate primary social support system and has some inability to obtain support without treatment and case management services.

Accordingly, the counselor recommended that Doe participate in an outpatient treatment program to address her substance abuse issues. It is undisputed that Doe did not comply with the recommendations from the evaluation or complete a relapse plan. At trial, the substance abuse counselor testified that she had conducted five substance abuse assessments for Doe since 2000, and that she had observed a pattern of relapses. She then expressed her opinion that Doe could only be successful if she was surrounded by a positive support group and was participating in treatment. Crosby, the Department social worker, gave similar testimony. As summarized by the magistrate:

> [Doe] has an extensive substance abuse problem, dating back at least twenty years, if not more. It appears from the testimony and exhibits that [Doe] has a significant history of relapse and failure to maintain sobriety.
> There was no evidence presented at the termination trial that [Doe] has completed any substance abuse treatment program during the course of this child protection case or that she had successfully completed treatment in the past.

Doe asserts that because she presented evidence that she had maintained sobriety after she was arrested in April 2011, the magistrate's finding of neglect related to her substance abuse

---

[6] It does not appear from the record that Doe refused, or that the Department requested random drug tests.

history was erroneous. We disagree. While Doe's claimed period of sobriety, if true,[7] is commendable, the evidence indicated that without dedicated participation in treatment and relapse prevention efforts, Doe was at a high risk to relapse into substance abuse. Doe does not dispute that she has a lengthy history of substance abuse treatment followed by relapses, or that she refused to comply with the evaluator's recommendations that were designed to minimize the risk of future relapse. The trial court did not err in holding that Doe's failure to participate in recommended treatment and relapse prevention programs contributed to her neglect of Son.

In June 2011, Doe was evaluated by Dr. Bill R. Arnold, a clinical and forensic psychologist, who summarized Doe's mental health conditions as follows:

> [Doe] has a prior diagnosis of bipolar I disorder with intermittent compliance with medications, as well as a complicating factor of traumatic brain injury, both as a child and also likely later in adulthood when she was physically abused by boyfriends. In addition to the symptoms associated with bipolar disorder, she shows a number of symptoms typically related to individuals with traumatic brain injury, including egocentricity, immaturity, difficulties with information processing speed, difficulties with memory, and impulsivity, as well as poor judgment

As a result, Dr. Arnold recommended: (1) a psychiatric evaluation to determine whether Doe could improve her functioning with medication; (2) individual counseling by a "therapist experienced in both personality disorders . . . as well as traumatic brain injury" to provide empathy training, anger management skills, stress management skills, interpersonal problem solving skills, and developmentally appropriate parenting skills; and (3) monitoring "to insure abstinence from alcohol and other illegal substances." Dr. Arnold concluded, "Based on her difficulties with parenting in the past and current difficulties with symptom management, the likelihood that [Doe] will improve to a level sufficient for safe parenting as her child develops appears poor to fair." It is undisputed that Doe did not comply with Dr. Arnold's recommendations, and Crosby testified that Doe did not adequately address her mental health issues.

Based on the evidence of Doe's mental health and substance abuse issues, the magistrate concluded:

---

[7] The Department apparently received reports from individuals in the community that Doe had been drinking during the pendency of this case.

9

The evidence before this court is that [Doe's] ability to parent her children is negatively affected by her unstable and untreated mental health condition and substance abuse issues. Because she has not addressed either of those conditions, she cannot be put in the role of parenting the child as she [is] at risk for dysfunctional parenting, and will remain so until her issues are adequately treated.

. . . .

[Doe] lacks the necessary insight to understand that her substance abuse and mental health issues are the core issues central to her inability to parent any of her children. If she does not or cannot perceive that these issues are problems, even after all the [Department's] interventions and involvement that has occurred over the years, then quite frankly, she never will. There is no evidence before the court that [Doe's] substance abuse and mental health issues have been or ever will be appropriately addressed sufficient to parent [Son].

The magistrate made explicit findings that Doe's mental health and substance abuse issues prevented her from providing proper parental care and support, and those findings were supported by substantial and competent evidence.

Each of the magistrate's findings--that Doe was unwilling or unable to provide for Son's special needs, that Doe was unable to provide sufficient housing and income to support herself and Son, and that Doe's mental health and substance abuse issues had not been addressed sufficiently to enable her to parent Son--was directly related to Doe's inability to provide adequate, safe parental care and was supported by substantial and competent evidence. Thus, we will not disturb the magistrate's findings that Doe's failure to take the necessary steps to address each of these parenting deficiencies constituted neglect of Son.

## B.     Best Interests of the Child

Finally, Doe asserts that the evidence did not support a finding that termination of Doe's parental rights was in Son's best interests. Doe argues that the magistrate erred "by weighing the negative impact of Mother's mental health, substance abuse, and other issues against the bond that existed between Mother and [Son]." The magistrate acknowledged that Doe's love for Son appeared "very sincere." However, the magistrate also recognized that Son needs stability and permanency, which Doe was not able to provide. The magistrate did not commit error by considering factors other than Doe's love for Son. Idaho courts have long recognized that "a child may not live on parental affection alone." *State ex rel. Child v. Clouse*, 93 Idaho 893, 896, 477 P.2d 834, 837 (1970); *accord In re Doe 2009-19*, 150 Idaho 201, 209, 245 P.3d 953, 961 (2010); *Idaho Dep't of Health & Welfare v. Doe*, 149 Idaho 627, 632, 238 P.3d 724, 729 (Ct. App. 2010). The magistrate considered Doe's inability to provide adequate housing and

10

financial support, as well as her limited ability to provide care to her son, due in part to her inattentiveness to Son's special needs, and in part to her unaddressed substance abuse and mental health issues. The magistrate also considered testimony from Son's guardian ad litem that Son had made significant progress with respect to his developmental delays since he was placed in foster care. Both Crosby and the guardian ad litem stated that, in their professional opinion, termination of Doe's parental rights would be in Son's best interests.

Doe also asserts that the magistrate incorrectly placed the burden on her to prove that she was fit to care for Son. We disagree. The magistrate correctly placed the burden on the Department to prove that termination was in Son's best interests. However, "[a]fter the Department made such a showing, it was . . . Doe's burden to come forward with contradictory evidence." *Doe*, 151 Idaho at 508, 260 P.3d at 1179. While Doe testified that she loved Son, she did not present evidence sufficient to rebut the Department's showing that his best interests would be served by terminating Doe's parental rights so that Son could be placed permanently in a family where his needs for stable and safe housing, financial support, and parenting attentive to his special needs would be met. Considering Doe's demonstrated inability to provide Son with adequate parental care and support, the progress that Son made while in foster care, and the recommendations of both the Department social worker and the guardian ad litem, the magistrate's decision that termination of Doe's parental rights was in Son's best interests was supported by substantial and competent evidence.

## III.

## CONCLUSION

The magistrate's findings that Doe neglected Son were supported by substantial and competent evidence, as was the magistrate's finding that termination of Doe's parental rights would be in Son's best interests. Doe has shown no error in the magistrate's findings and conclusions. Therefore, the magistrate's order terminating Doe's parental rights is affirmed. No costs or attorney fees are awarded on appeal.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR.**