**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40366**

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JOHN (2012-13) DOE. | ) ) ) ) |
| _____ | ) |
| | ) |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) ) |
| Petitioner-Respondent, | ) ) |
| v. | ) ) |
| JOHN (2012-13) DOE, | ) ) |
| Respondent-Appellant. | ) ) |
| _____ | ) |

2013 Unpublished Opinion No. 378

Filed: February 27, 2013

Stephen W. Kenyon, Clerk

THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Mick Hodges, Magistrate.

Decree terminating parental rights, affirmed.

Clayne S. Zollinger, Jr., Rupert, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Twin Falls, for respondent.

_____

GUTIERREZ, Chief Judge

John Doe (Father) appeals from the magistrate's decree terminating his parental rights to his children, arguing the magistrate erred by prematurely finding the following: that termination was in the best interests of the children; that Father had not put himself in a position to parent his children; and that Father was not disabled or in need of adaptive equipment or supportive services. We affirm.

**I.**

**FACTS AND PROCEDURE**

The Idaho Department of Health and Welfare (Department) filed a Child Protective Act (CPA) case involving Father's two minor children in November 2010. The Department initially

1

sought protective supervision, but later filed for protective custody of the children. After a shelter care hearing, the magistrate vested legal custody of the children with the Department in January 2011. The parties prepared a family case plan, pertaining to both Father and the children's mother, and filed it with the magistrate in February. Based on the parties' stipulation at the six-month review hearing in May 2011, the magistrate ordered the children to remain in protective custody. The magistrate held review hearings in June, July, August, and November 2011, none of which resulted in reunification of the parents with the children. The November review also included a special hearing that pertained to whether Father or the mother was disabled and needed adaptive services or other accommodations in order to meet the requirements in the case plan. In its disposition following the hearing, the magistrate found neither parent had disabilities that prevented Father or the mother from complying with the case plan or, at least at a minimum, neither required accommodations in order to complete the case plan.

The magistrate conducted an additional review hearing in January 2012. Finally, in February 2012, the Department moved to terminate the parental rights of both Father and the children's mother. The magistrate conducted the termination hearing in August and, in September, entered a decree terminating the parental rights of both parents. Father timely appeals and asserts the magistrate court erred in three ways: by determining it was in the best interests of the children to terminate Father's parental rights; by failing to find that Father put himself in a position to parent the children; and by failing to find that Father is disabled and needed adaptive equipment or supportive services in order to complete the case plan.

## II.

## STANDARD OF REVIEW

The United States Supreme Court has held that a parent's interest in maintaining a relationship with his or her child is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Quilloin v. Walcott*, 434 U.S. 246, 254-55 (1978). *See also In re Doe*, 146 Idaho 759, 761, 203 P.3d 689, 691 (2009). Concordantly, the Idaho Legislature has, in the CPA, directed that "the state of Idaho shall, to the fullest extent possible, seek to preserve, protect, enhance and reunite the family relationship." Idaho Code § 16-1601. Likewise, the Termination of Parent and Child

2

Relationship Act states, "Implicit in this chapter is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001(2).

Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by "clear and convincing evidence." *Santosky*, 455 U.S. at 769. *See also* I.C. § 16-2009; *Doe*, 146 Idaho at 761-62, 203 P.3d at 691-92; *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245, 220 P.3d 1062, 1064 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order terminating parental rights. *Id.* at 245-46, 220 P.3d at 1064-65. The Idaho Supreme Court has also stated, however, that the substantial evidence test requires a greater quantum of evidence in cases where the trial court finding must be supported by clear and convincing evidence, than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *In re Doe*, 143 Idaho at 346, 144 P.3d at 600.

### III.
### DISCUSSION

#### A.    Grounds for Termination

A court may terminate a person's parental rights if it finds a statutory ground exists for termination and termination is in the best interests of the child. I.C. § 16-2005; *Doe v. Roe*, 133 Idaho 805, 810, 992 P.2d 1205, 1210 (1999). A court may terminate the parental relationship where it finds the parent has abused or neglected the child. I.C. § 16-2005(b). Neglect is defined as a situation in which the child lacks parental care necessary for his health, morals and wellbeing, I.C. § 16-1602(25), or where the "parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9), I.C. § 16-2002(3)(b). *See also Dep't of Health & Welfare v. Doe*, 145 Idaho 662, 663-64, 182 P.3d

1196, 1197-98 (2008). The time standard set forth in section 16-1629(9) creates a presumption that the Department shall initiate proceedings to terminate parental rights if the child is placed out of the home for fifteen of the last twenty-two months; it does not, however, create a presumption that it is in the best interests of the child to terminate parental rights. *Dep't of Health & Welfare v. Doe*, 149 Idaho 474, 479, 235 P.3d 1195, 1200 (2010). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds, supported by substantial and competent evidence. *In re Doe*, 152 Idaho 953, 957, 277 P.3d 400, 404 (Ct. App. 2012).

On appeal, we interpret Father's assertion that the magistrate erred by finding Father did not put himself in a position to parent the children as a challenge to the determination that a statutory ground for termination existed based on neglect. Accordingly, we review whether the magistrate's decision to terminate is supported by substantial and competent evidence that supports both finding that neglect existed and that it was in the best interests of the children to terminate Father's parental rights.

## B.      Whether the Decision is Supported by Substantial and Competent Evidence

Father contends the magistrate's decision to terminate his parental rights was in error because he substantially complied with his case plan and had been working on it to the best of his ability. Father asserts he completed monthly budgets, obtained a mental health assessment, participated in substance abuse testing, obtained a substance abuse evaluation, and attempted to obtain counseling. Further, he declares he attempted to maintain safe, stable, and sanitary housing, and later obtained different housing--although the Department still found it inadequate. Moreover, Father claims he is disabled. As a result of his disability and other health issues, Father argues his sole income comes through government benefits; with the limited government benefits he could not pay child support or afford transportation; and without transportation or other supportive services, he was unable to complete other tasks in the case plan. In other words, he argues the magistrate decreed the termination of his parental rights based on his lack of financial resources and a lack of disability accommodations.

At the termination hearing, the Department called numerous witnesses to testify to support a finding that Father failed to comply with the case plan and that termination was in the best interests of the children. The first social worker the Department called to the stand testified he did not feel the parents should have additional time to work the case plan, all services the

parents had requested had been provided, and the parents' home and plan of support were unsuitable for the children to return to. Specifically, he testified that Father had never started drug treatment. In fact, Father self-reported on a second evaluation that he did not have a drug problem at all, resulting in Father's failure to qualify for treatment that was required of him pursuant to the case plan. Moreover, the social worker testified that he had worked with both Father and the mother on elements of the case plan, but they did not make financial or other household changes that were necessary. As examples, the social worker related that Father and the mother did not provide monthly budgets and did not eliminate unsanitary and hazardous conditions in their home. In the social worker's opinion, it was in the children's best interests to terminate the parental relationship because the children needed stability, which the parents did not provide.

The next witness, another social worker, testified to one child's diagnosis of post-traumatic stress disorder based on past events in her home, including suffering sexual abuse. The social worker testified to the significant improvements in the child's mental health following placement in foster care versus the minimal improvement in the child's mental health while she was in the care of her parents. Testimony further demonstrated that Father required a great deal of care and attention from the mother and this made it difficult for the two, as parents, to prioritize and take care of the children.

The individual employed to help coordinate substance abuse treatment for the parents also testified. He noted that both parents initially qualified for substance abuse treatment. The mother had failed to complete two different programs, and did not seek placement in another facility by the time of the termination hearing, a period of over a year. Father never even began substance abuse treatment.

Echoing the observations of the second social worker to testify, one of the children's foster parents also testified as to the positive changes in the children while in foster care. The children exhibited strange behaviors when they were first in her home, but as a result of counseling and work with the children, they improved those behaviors. The foster parent testified to the negative effect visitations with the children's parents had on the children including nightmares, vomiting, and headaches. She stated that at visitations, Father and the mother would discuss the need to have the children back in order to receive welfare benefits, and as a result, the children would worry about the parents and exhibit what could be characterized as

5

guilt that the parents were struggling without the receipt of such benefits. Father would become argumentative and confrontational with staff and other case workers during the visits. Moreover, during visits when Father was not present, the mother would make comments to the children expressing concern about his health and speculating that it may take a severe decline. This caused anxiety and angst in the children that their father may pass away at any time. The children's emotional and physical recovery after visits would take up to two or three days. When the children had their last goodbye with the parents just before visitations were to cease, the foster parent observed visible happiness and release in the children. She opined that the children most needed permanency.

Next, the children's guardian ad litem testified. She had been assigned to the case since the initial CPA action was filed in 2010 and was aware of the case plan, the attendant requirements the parents were to meet, and the progress each parent made. She believed the case plan was reasonable, but noted the parents did not complete it and any progress they made was short term. She testified that the parents did not keep in contact with her and she did not know where they lived at the time of the trial. In her constant contact with the children, she noted the children were doing better in school and were more under control while in foster care. In her opinion, termination of parental rights was in the children's best interests.

The visitation supervisor also testified, offering additional evidence regarding the negative effects the visitations with the parents had on the children. According to that testimony, Father missed numerous visitations and attended others only via the telephone. The visitation supervisor also observed that the children were upset by the visits and by the parents asserting that without them in the home, the parents could not collect certain welfare benefits.

Another licensed social worker--the primary worker on the case--described what was required of each parent in the case plan. The social worker provided testimony that Father did not provide monthly budgets, did not keep the social worker updated on the parents' current address, did not complete required drug treatment, and did not regularly provide voluntary child support to the children while they remained in the state's custody. Moreover, the parents disallowed the social worker from entering their house at times (she was to be granted access to the home) and, on other occasions, were uncooperative and threatening to persons involved with the case. During one visit by the social worker in particular, Father called the police in an attempt to thwart the social worker's request to enter the parents' home. In her opinion,

6

termination was in the best interests of the children because of the lack of follow-through and lack of completion of items in the case plan by the parents, because of the depth of improvements the children had shown in foster care, and because of the length of time the children had been in foster care. She testified that parental exposure had detrimental effects on the children's behavior and that granting additional time to the parents to work on the case plan would serve no purpose.

Though Father challenges the determination by the magistrate that Father did not put himself in a position to parent the children, most of the evidence outlined above is unrefuted. For example, Father presented no evidence to the magistrate to support a finding that the ordered drug treatment was unnecessary, nor do we find that Father, at any time during the pendency of the case, objected to the case plan including the provision that required him to obtain such treatment. Upon this record, there is substantial and competent evidence that Father failed to meet the requirements of the case plan, establishing the statutory ground of neglect, and that termination was in the best interests of the children. Summarizing the testimony of the numerous witnesses, evidence showed that the children's behavior and mental health issues improved after removal from the parents' home; Father often exhibited inappropriate, confrontational, and uncooperative behavior towards caseworkers; visitations had visible and lingering effects on the children; the parents and their home life continued to lack the stability the children needed for permanency; and any progress the parents made on the case plan in the nearly two years of the pendency of the case had been temporary.

Further, the evidence in this case is not commensurate with the evidence in *Dep't of Health & Welfare v. Doe*, 150 Idaho 752, 250 P.3d 803 (Ct. App. 2011), the case on which Father relies to support his argument that the magistrate's decision to terminate his parental rights was premature. Unlike the parent in *Doe*, 150 Idaho 752, 250 P.3d 803, Father has not been consistent with his progress on the case plan, he has not followed substantially all of the recommendations and requirements in the case plan, and he has no fairly determinate timeframe that would provide him the ability to complete the case plan and provide a suitable environment for the mental and physical wellbeing of his children. The magistrate did not err in determining termination of the Father's parental rights was in the best interests of the children, nor did it err in finding that a grant of additional time to complete the case plan was unnecessary.

**C.      Factual Findings Regarding Father's Alleged Disability**

Father asserts the magistrate erred by failing to find that Father was disabled due to medical conditions and needed adaptive equipment to complete tasks in the case plan. Father states he is a fifty-eight-year-old male with significant medical problems--including asthma, a chronic lung disease that makes it difficult to breathe, uncontrolled diabetes, chronic back pain, and a history of seizures--and that he is confined to a wheelchair and uses oxygen. Father argues that due to his conditions, he has difficulty with mobility and that the lack of transportation and other services coordinated or provided by the Department contributed to his inability to attend visitations and counseling sessions and to maintain and clean the home as required. Father notes he did not qualify for any government program that would provide these services, but nonetheless, contends the Department must provide these services so that termination is not based on something completely unrelated to a person's ability to parent. Further, as Father could not afford transportation services on his own, he contends termination was largely based on financial reasons.

In our review of the record, this Court will not set aside a magistrate's findings of fact unless they are clearly erroneous. Idaho Rule of Civil Procedure 52(a); *Doe I v. Doe*, 138 Idaho 893, 906, 71 P.3d 1040, 1053 (2003). We do not disturb findings of fact that are based upon substantial and competent, although conflicting, evidence. *Doe I*, 138 Idaho at 906, 71 P.3d at 1053. Giving due regard for the trial judge's opportunity to assess the credibility of the witnesses, we will liberally construe the trial court's finding of fact in favor of the judgment entered. *Id.* Even if a finding of fact is in error, this Court should disregard such error unless it affects the substantial rights of the parties. I.R.C.P. 61.

In consideration of a disabled parent who faces termination of parental rights, Idaho Code § 16-2005(6) provides the following:

> If the parent has a disability, as defined in this chapter, the parent shall have the right to provide evidence to the court regarding the manner in which the use of adaptive equipment or supportive services will enable the parent to carry out the responsibilities of parenting the child. Nothing in this section shall be construed to create any new or additional obligation on state or local governments to purchase or provide adaptive equipment or supportive services for parents with disabilities.

All that the statute grants is the right to put forth evidence during termination proceedings regarding the manner in which adaptive equipment or supportive services would assist the parent

in discharging his or her parental responsibilities. *See Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 509, 260 P.3d 1169, 1180 (2011). To establish that a court erred in considering the parent's disability, a parent must point to evidence presented of supportive services that would enable the parent to carry out the responsibilities of parenting the child. *Dep't of Health & Welfare v. Doe*, 149 Idaho 627, 632, 238 P.3d 724, 729 (Ct. App. 2010). Where a parent has failed to present evidence of specific supportive services that could sufficiently aid in parenting, we will not find error in the magistrate's consideration of the parental disability. *See id.*

There is evidence in the record that although Father stated he had several illnesses, Father never specified how those illnesses limited his ability to comply with the case plan. He offered no indication of what he was capable of doing as it related to requirements expected of him, nor did he offer suggestions as to how to solve purported problems his illnesses presented. To the contrary, Father relied on his ailments to excuse him from compliance. Even with such ailments, other evidence showed Father was not consistently confined to a wheelchair, as more than one witness saw Father walking at various times. It was also known that Father and mother indicated they had a truck that was unusable for some unknown reason. However, the parents did not adjust their monthly budget to be able to afford repairs, registration, or insurance--whatever was needed--to make the truck an available transportation option. Nonetheless, the parents continued to maintain internet access and other dispensable monthly expenses. Moreover, case workers also testified that Father was offered transportation services. In regards to drug treatment specifically, Father was given the opportunity to be reimbursed through state programs for transportation to a treatment program, but Father failed to follow through with treatment or the offered services when they were available to him (prior to his self-report that he did not have a drug or alcohol problem). Further, there is no place in the record where Father made specific requests for further accommodations as necessary in order for Father to complete the tasks in the case plan. There was an indication he may want in-home care services, but he failed to state why he and the mother could not, between the two of them, provide a suitable environment for the children without such services or how such in-home services would put him in a better position to discharge his parental responsibilities. In light of the evidence presented before and at the special hearing, the magistrate found the case plan remained in place without modification, the parties stipulated that the transportation issue had been resolved, and neither parent had a disability that prevented them from complying with the case plan, or at least, they did not require

9

accommodations to complete the requirements. Upon this record, Father cannot show that the magistrate failed to consider the evidence or that the magistrate treated him unfairly due to a disability. Moreover, Father's assertion that the Department must provide any requested services is contrary to the plain language of the statute.

## IV.

## CONCLUSION

We conclude the magistrate's decision to terminate Father's parental rights based on neglect and the best interests of the children is supported by substantial and competent evidence and was not premature. Additionally, we conclude the magistrate's findings that Father was not disabled and did not require accommodations to comply with the case plan were not clearly erroneous. Accordingly, we affirm the decree of the magistrate terminating the parental rights of Father.

Judge LANSING and Judge MELANSON **CONCUR.**