IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 47579

| | |
|---|---|
| In the Interest of:<br>Jane Doe I, Jane Doe II, Jane Doe III,<br>Jane Doe IV, John Doe I, and John Doe II,<br>Children Under Eighteen (18) Years of<br>Age. | ) <br> ) <br> ) <br> ) <br> ) |
| STATE OF IDAHO, DEPARTMENT OF<br>HEALTH AND WELFARE, | ) <br> )   Filed: March 24, 2020 |
|     Petitioner-Respondent, | ) <br> )   Karel A. Lehrman, Clerk |
| v. | ) <br> )   THIS IS AN UNPUBLISHED |
| JANE DOE (2019-42), | )   OPINION AND SHALL NOT<br>)   BE CITED AS AUTHORITY |
|     Respondent-Appellant. | ) <br> ) <br> ) |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Michelle M. Evans, Magistrate.

Judgment of termination of parental rights, affirmed.

McFarland Law Office; Joanna M. McFarland, Lewiston, for appellant. Joanna M. McFarland argued.

Hon. Lawrence G. Wasden, Attorney General; Floyd L.E. Swanton, Deputy Attorney General, Boise, for respondent Department of Health and Welfare. Floyd L.E. Swanton argued.

Anthony C. Anegon, Lewiston, guardian ad litem. Anthony C. Anegon argued.

---

GRATTON, Judge

Jane Doe (Mother) appeals from the judgment terminating her parental rights. For the reasons set forth below, we affirm.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has six children. The minor children have four different fathers whose rights were also terminated but are not parties to this appeal. Mother has an extensive history with the Idaho Department of Health and Welfare (Department). In June of 2018, the Department received a report the children were being left under the supervision of criminals and drug users. Mother and children were residing with her mother (Grandmother) at the time. When social workers arrived to investigate they found the three youngest children alone in the yard. Grandmother, the only source of supervision, was inside asleep but could not be woken by the social workers or the children. The children's appearance was described as awful and dirty. They had diapers filled with excrement, skin covered in scabs, and clumpy, unkempt hair. Being unable to wake Grandmother, the social workers called law enforcement. Mother returned to the home and a home visit was scheduled to discuss appropriate supervision and safety. Before the home visit, Mother canceled via text message and moved the children to an undisclosed location.

Shortly after, a concerned citizen contacted the Department about the possibility of abandoned children in a small trailer house at a different location. Law enforcement responded and found the children alone and in much worse condition than observed during the previous encounter. The children were declared to be in imminent danger. Mother arrived hours later with visible track marks on her arms. Mother admitted the children were left alone for three days while she was gone using methamphetamine. The children were taken into the custody of the Department.

An adjudicatory hearing took place in July of 2018 and a case plan was ordered shortly after. The plan required Mother to address her drug use through treatment and testing. The plan further required Mother to obtain stable housing, complete parenting classes, attend visitations with the children, and to become financially secure. After a year and five review hearings, the magistrate court held a permanency hearing. Based on Mother's lack of progress, the permanency goals were changed from reunification to termination. The State filed a petition to terminate Mother's parental rights alleging it would be in the best interests of the children, and that Mother had abandoned and neglected the children. A trial was held in September and Mother testified on her own behalf. As part of that testimony, Mother described how she had been committed to a psychiatric hospital as a result of an overdose and how during that

commitment she was diagnosed with bipolar disorder, anxiety, and depression. A psychological evaluation was admitted into evidence which demonstrated Mother had a low IQ score and had mild impairment. She was additionally diagnosed with histrionic personality disorder and methamphetamine use disorder. After trial, the magistrate court terminated Mother's parental rights. It determined Mother had neglected her children and that termination was in the best interests of the children. Mother timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. Idaho Code § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally

understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *In re Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

### A.    The Magistrate Court Sufficiently Considered Mother's Disabilities

Mother argues the magistrate court erred by failing to consider her disability and the Department failed to provide supportive services which would have enabled her to complete her case plan. Disability is defined broadly to include any mental or physical impairment which substantially limits one or more major life activities.[1] Once disability is established, a parent has the right to provide evidence to the court regarding the manner in which the use of adaptive equipment or supportive services will enable the parent to carry out the responsibilities of parenting the child. I.C. § 16-2005(6). However, the statute is clear that "nothing in this section shall be construed to create any new or additional obligation on state or local governments to purchase or provide adaptive equipment or supportive services for parents with disabilities." *Id.*

---

[1]    "Disability" means, with respect to an individual, any mental or physical impairment which substantially limits one (1) or more major life activities of the individual including, but not limited to, self-care, manual tasks, walking, seeing, hearing, speaking, learning, or working, or a record of such an impairment, or being regarded as having such an impairment. . . . Whether an impairment substantially limits a major life activity shall be determined without consideration of the effect of corrective or mitigating measures used to reduce the effects of the impairment. Idaho Code Ann. § 16-2002.

Reviewing whether the trial court erred in its consideration of a parent's asserted disability necessitates the parent having demonstrated such disability and the specific evidence of supportive services which would have enabled them to carry out their responsibilities. *In re Doe*, 157 Idaho 694, 704, 339 P.3d 755, 765 (2014).

Mother asserts that "the caseworker knew something was not ok with [Mother's] mental status but did not explore it" and though "the social worker . . . was aware of [Mother's] disabilities, based on knowledge of her psychiatric hospitalization, . . . he made no concerted effort to ensure [Mother] was aware of the available services or assist her in managing the tasks of the case plan in accordance with the significant deficiencies disclosed to him." In essence, Mother argues the Department did not do enough; however, the proper analysis focuses on what the putative parent did or did not do. *Id.*

We need not address whether any number of Mother's asserted disabilities are valid, as Mother failed to submit medical evidence that demonstrated how those disabilities impacted her or any evidence that suggested supportive services would be beneficial. This was not the responsibility of the Department and the magistrate court could not analyze that which was not provided. Mother asserts she put forth evidence of supportive services by referencing programs the Department had offered her: parenting coaching, housing assistance, substance abuse treatment, and counseling services. However, this reference to programs is not evidence of supportive services that would aid her in parenting as contemplated by the statute. Moreover, identifying programs that have the potential to be beneficial is not enough; Mother was required to establish the magistrate court erred by failing to consider proposed supportive services and the reasons they would have enabled her to carry out the responsibilities of parenting her children. *Idaho Dep't of Health & Welfare v. Doe*, 149 Idaho 627, 632, 238 P.3d 724, 729 (Ct. App. 2010). Mother made no such showing and therefore the magistrate court did no err in its consideration of her disabilities.

**B.**     **Mother Cannot Assert Impossibility as a Defense Because the Issue is Not Preserved**

Mother argues that she had diminished mental capacity, such that she was prevented from complying with her case plan. Impossibility may be asserted as a defense to a claim of neglect founded upon failure to comply with the requirements of a case plan. *Idaho Dep't of Health and Welfare v. Doe*, 162 Idaho 236, 243, 394 P.3d 1269, 1276 (2017). Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322,

5

815 P.2d 1061, 1062 (1991). The State asserts Mother's defense of impossibility should not be entertained because it was not properly preserved below. We agree. The record reflects Mother did not raise the defense at any time. Moreover, Mother argued in closing that she *had* complied with her case plan: "the remaining tasks from the department may seem to be unfinished, but they are near completion or completed."

Mother counters that the defense was asserted implicitly by testimony describing the impossibility of completing her case plan until her mental health stabilized. However, again, Mother asserts that her difficulty completing the plan put the Department on notice of her defense: "the Department has been aware that [Mother] has a diminished cognitive capacity." Mother was responsible for asserting the defense below in order to preserve it for appeal. Because she did not, we will not consider it now.

## C. Substantial and Competent Evidence Supports the Magistrate Court's Conclusion of Neglect

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Section 16-1602(31)(b) provides, in pertinent part, that neglect exists where the parent is unable to discharge her responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for its health, safety, or well-being. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a child protective act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b). Finding neglect under I.C. § 16-2002(3)(b) requires the magistrate court to "find that the parent is responsible, whether directly or indirectly, for non-compliance with the requirements of a case plan." *Idaho Dep't of Health & Welfare v. Doe* (2016-14), 161 Idaho 596, 600, 389 P.3d 141, 145 (2016). This requirement reflects the reality presented by parents who engage in behavior that results in non-compliance with no apparent thought or consideration of the effect of that behavior upon the case plan. *Matter of Doe*, 164 Idaho 875, 879, 436 P.3d

6

1224, 1228 (2019). The magistrate court found that the evidence established neglect pursuant to I.C. § 16-1602(31)(a) and (b) as well as I.C. § 16-2002(3)(b).

Mother concedes she failed to comply with her case plan. However, Mother asserts she was not responsible for that non-compliance. As pointed out by the magistrate court, this assertion is belied by the record:

> There was a great deal of testimony about the case plan tasks required of [Mother] and whether she had completed them or not. While [Mother] made progress on complying with a substance abuse assessment and treatment, she was resistant to follow what was recommended. Her delay in obtaining the treatment that she needed caused a delay in all other aspects of achieving any semblance of stability. But that was her choice. Additionally, she still has not engaged in an aftercare program. She has not completed 100% of the UAs requested. She has not remained substance free (it's possible she was able to do so during the latter part of the case, but since she did not comply with the requested UAs, it cannot be confirmed). . . . She still has not obtained, let alone maintained, safe and stable housing . . . even with a parenting coach['s] help, she was not able to incorporate for any appreciable length of time during each visit the parenting skills provided to her.

The record demonstrates that Mother's failure to address the requirements of her case plan are not specific to untreated mental issues. She argues such behaviors were drastically changed with the introduction of the appropriate medications. However, as the magistrate court pointed out, there was no significant improvement even after medication was introduced as she continued to avoid UAs. Mother alone was directly responsible for failing to comply with her case plan tasks and the magistrate court's findings are supported by substantial and competent evidence.

The magistrate court additionally found, contrary to Mother's assertions on appeal, that she neglected her children under I.C. § 16-1602(31)(a) and (b) because of her inability to discharge parental duties. Having determined Mother neglected the children on another basis, we need not address in detail the second basis but will note it appears from the record that the finding is also supported by substantial and competent evidence.[2]

---

[2]  The magistrate court found:

> At the beginning of this case, given the horrible conditions the children endured-- lack of stable home; malnourishment; need of medical care; extreme lack of parental control; yelling and physical punishment to attempt some control over the children; inability to properly keep track of all six children or engage with the children due to her drug use, lack of parenting skills, etc.--it is abundantly clear that [Mother] neglected the children. During the course of this case, [Mother]

**B. Substantial and Competent Evidence Supports the Magistrate Court's Conclusion That Termination Is in the Children's Best Interests**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court determined it would be in the best interests of the children to terminate the parental relationship with Mother. Specifically, the magistrate court stated:

> All of these young children are thriving in their current placements. They have safe, stable, supportive, caring and loving homes, which [Mother] still cannot provide after all of the resources provided to her through the CPA case. Mother has been involved with IDHW regarding the welfare of her children for about nine years now . . . . She still lacks stable housing, lacks any appreciable length of employment, and lacks a demonstrable period of time where she makes safe choices for her children . . . . [Mother] is exhausted after each weekly 2 hour visitation. It is inconceivable to believe she could possibly safely and adequately care for the six young, active children on a full-time basis . . . .

Mother argues that the children are always excited to see her and it is not beneficial for them to be separated by different placements. These assertions are likely true but the magistrate court is correct that those considerations do not override their need for permanency and stability. Thus, the magistrate court's finding that termination of Mother's parental rights was in the best interests of the children is supported by substantial and competent evidence.

---

> made some progress, but insufficient to keep the children from being right back in the same condition should they be returned to her care.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's decision to terminate Mother's parental rights on the basis of neglect and on the basis of the children's best interests. Accordingly, we affirm the judgment terminating Mother's parental rights.

Chief Judge HUSKEY and Judge BRAILSFORD **CONCUR**.